21032

The STATE, Respondent, v. Joseph Clemmie MOULTRIE, Appellant.

(257 S. E. (2d) 780)

*Charles B. Macloskie,* of *Harvey, Battey, Macloskie & Bethea,* Beaufort, and *Dennis N. Balske,* of Montgomery, Ala., *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Brian P. Gibbes* and *Staff Atty. Lindy Pike Funkhouser,* Columbia, and *Sol. Randolph Murdaugh, Jr.,* Hampton, *for respondent.*

August 16, 1979.

LITTLEJOHN, Justice:

Joseph Clemmie Moultrie was indicted for the murder of Deputy Stephen Anthony Breland and convicted by a jury.

He has appealed the trial judge's refusal to quash the grand jury and his refusal to charge self-defense or defense of habitation. Finding no error in the judge's rulings, we affirm.

I. *Self-defense and defense of habitation.*

The trial judge ruled that the evidence did not warrant a charge on self-defense or defense of habitation. That ruling was correct. An instruction should not be given unless justified by the evidence. *State v. Weaver,* 265 S. C. 130, 217 S. E. (2d) 31 (1975). One element necessary to both self-defense and defense of habitation is that the defendant be without fault in bringing about the difficulty. *State v. Osborne,* 202 S. C. 473, 25 S. E. (2d) 561 (1943). Under any view of the evidence, Moultrie was at fault in refusing to submit to an arrest warrant, admittedly valid. When Deputies Beach and Brown approached the house with the warrant, he should have peaceably surrendered.

The force used by Breland was not excessive. Moultrie did not surrender when given an opportunity. He was barricaded in his house with a gun, which he had previously threatened to use. The action of the officers was not inconsistent with their duty.

II. *Selection of the Grand Jury.*

Moultrie was indicted by a Colleton County grand jury. After a change of venue to Beaufort County, he moved to quash. At the hearing on the motion, there was undisputed evidence that, according to the 1970 census, 40% of the population of that county old enough to serve on a jury was black. In 1977, 38% of the registered voters were black.

For the years 1971-1977, the percentage of blacks serving on the grand jury was as follows:

| YEAR | PERCENTAGE OF BLACKS | NUMBER OF BLACKS |
|------|----------------------|------------------|
| 1971 | 6% | 1 |
| 1972 | 28% | 5 |
| 1973 | 28% | 5 |
| 1974 | 39% | 7 |
| 1975 | 39% | 7 |
| 1976 | 22% | 4 |
| 1977 | 17% | 3 |

The grand jury is selected in the following manner: Each year twelve new names are selected, by random drawing, from a jury pool. The six remaining "hold over" jurors are selected, at random, from the twelve individuals who sat for the first time on the previous year's grand jury. The six jurors on the previous year's grand jury who were held over are retired.

The Colleton County Election Commission explained how it operated. The jury pool, from which the grand jury is selected, is composed as follows: The Commission goes through the voter registration list and excludes those whom a member of the Commisson knows to be deceased, to be infirm, to be excused by statute, or to have moved from the county; they also exclude those known to have committed a crime. Other than by this last criterion, the Commission denied excluding anyone on the basis of moral character. It denied excluding anyone on the basis of race. The voter registration list indicates the race of the voter.

If a defendant shows (1) that the grand jury selection procedure used in his case presents an opportunity to favor one group over another, (2) that the group discriminated against is a distinct class, singled out for different treatment of the laws, as written or applied,

and (3) that the group was significantly underrepresented, he establishes a prima facie case of discrimination in violation of the equal protection clause of the United States Constitution. *Castaneda v. Partida,* 430 U. S. 482, 494-495, 97 S. Ct. 1272, 51 L. Ed. (2d) 498 (1977). Unless the State can meet its resulting burden to disprove discrimination, the defendant is entitled to have the indictment quashed. *Castaneda.*

Of course, the black race is an identifiable class. ■ *Washington v. Davis,* 426 U. S. 229, 96 S. Ct. 2040, 48 L. Ed. (2d) 597 (1976). And, the commissioners had an opportunity to discriminate, for, as they were deciding whom to strike, they were aware, from the voter list and from personal knowledge, of the voters' race. *See Blackwell v. Thomas,* 4 Cir., 476 F. (2d) 443 (1973).

However, since the evidence presented did not demonstrate that blacks were excluded in significant numbers, the prima facie case was not made out. We believe that it is appropriate to consider alleged discrimination from 1972 through 1977, and to exclude 1971. It is more logical to ignore 1971 than to consider it, because the number of blacks selected in the later years is closer to the number selected in 1977. The period for comparison must be cut off somewhere; it is appropriate to stop where there is an abrupt change in percentages, signaling a change in the practice of the commissioners. During these six years blacks held 31 out of the 108 seats on the grand jury; this is approximately 29%. Such is only 11 percentage points less than the percent of blacks in the adult population, and 9 percentage points less than the percent of blacks in the total number of voters. No case has held such a small discrepancy to be significant. The most extreme is *Jones v. Georgia,* 389 U. S. 24, 88 S. Ct. 4, 19 L. Ed. (2d) 25 (1967). In that case, the Court held that a prima facie case was established where blacks represented 19.7% of those on the tax lists, but only 5% of those on the jury lists, for a discrepancy of 14.7 percentage points. In

*Swain v. Alabama,* 380 U. S. 202, 85 S. Ct. 824, 13 L. Ed. (2d) 759 (1965), blacks comprised 26% of the population and 10-15% of those in the jury pool. The Court held the 11-16 percentage point difference was not significant.

Even if the defendant had succeeded in establishing a prima facie case, he would not be entitled to prevail. As in *Swain,* the detailed explanation of the jury commissioners concerning their method of selecting jurors rebuts any alleged prima facie case of discrimination.

The verdict and judgment are

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.