681 S.E.2d 31

**The STATE, Respondent,**

**v.**

**Christopher Sam COMMANDER, Appellant.**

**No. 4560.**

Court of Appeals of South Carolina.

Heard March 18, 2009.

Decided June 11, 2009.

Rehearing Denied Aug. 25, 2009.

---

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek and Assistant Appellate Defender LaNelle C.

DuRant, South Carolina Commission on Indigent Defense, of Columbia, for Appellant

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, Office of the Attorney General, of Columbia; and Solicitor Warren B. Giese of Columbia, for Respondent.

GEATHERS, J.:

Appellant Christopher Commander seeks review of his murder conviction. He challenges the trial court's admission of certain expert testimony and the trial court's failure to charge the jury on the defense of accident. We affirm.

## FACTS/PROCEDURAL HISTORY

Commander's pregnant girlfriend, Gervonya Goodwin, was last seen alive by members of her family on November 29, 2004. On January 7, 2005, her family discovered her body covered with a blanket and lying on a couch inside her home. The body was mummified and partially decomposed.[1] Additionally, Goodwin's purse, cell phone, and car were missing. Police investigators and family members later discovered that Commander had (1) stolen Goodwin's car, credit cards, and cell phone; (2) withdrawn money from her bank accounts; and (3) sent text messages from her cell phone to members of her family indicating that she was at the beach and was still alive. Commander admitted to killing Goodwin when he was arrested in New Orleans, Louisiana.

The State indicted Commander for murder in violation of S.C.Code Ann. § 16–3–10 (2003). At trial, the State's expert in forensic pathology, Dr. Clay Nichols, testified that the cause of Goodwin's death was asphyxiation. Prior to sharing his final conclusion as to the cause of death, counsel for the State

---

1. "Mummified" means that the body is dried out from a low level of humidity so that the skin surfaces are relatively maintained and the internal organs maintain their shape in the normal anatomic relationships. The State's expert in forensic pathology, Dr. Clay Nichols, stated that Goodwin's body could have dried out from being left in her heated home for several weeks.

questioned him about his preliminary conclusion upon examining Goodwin's body at her home:

Q Did you come—after your examination and prior to getting the toxicology reports back, did you come to a preliminary conclusion as [sic] the cause of death in this case?

A Yes, I did.

Q And what was that, sir?

A Given the fact that this woman died under suspicious circumstances, that the history I was given was that her— she was already in her house, no one had talked to her for a period of time, her car was missing, her purse was missing, there was some indication that somebody was sending text messages to family members indicating that the dead woman, Gervonya Goodwin, was still alive, this indicated an extremely suspicious circumstance, and I felt that we were dealing with a homicide.

Defense counsel immediately objected. Outside the jury's presence, defense counsel argued that Dr. Nichols' opinion was based on matters outside the scope of his expertise and therefore was not allowed under Rule 702, SCRE.[2] The trial court questioned Dr. Nichols on his definition of "homicide," and Dr. Nichols responded as follows:

THE WITNESS: Yes sir. Homicide is someone [sic] who died as a result of the actions of another individual.

THE COURT: As opposed to?

THE WITNESS: An accidental cause where somebody **unintentionally** caused death to another individual.

(emphasis added). Defense counsel objected to Dr. Nichols' use of the concept of intent in his definition of "homicide" and requested that the trial court give a curative instruction to the jury.

---

**2.** Rule 702, SCRE, states the following: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The trial court did not indicate whether it would give a curative instruction, but it directed counsel for the State to question Dr. Nichols on his definition of "homicide" in the jury's presence.[3] Dr. Nichols provided the jury with the following definition:

Q Doctor, what is your definition of homicide?

A A person that [sic] has died as a result of another person's actions.

Q And in your opinion in this case, was this or could this have been a natural death?

A No, I don't believe so.

Q Or an accidental death?

A No, I do not believe so.

Q Or a suicide?

A No, I don't believe so.

Defense counsel cross-examined Dr. Nichols on his earlier statement that Goodwin died under "suspicious circumstances," and Dr. Nichols explained that the autopsy process included interpreting the history of the case. During his explanation, Dr. Nichols stated "somebody went through an awful lot of effort to cover up this death...." After ruling out other causes of death, Dr. Nichols concluded that the cause of Goodwin's death was homicide due to asphyxiation. The conclusion was based in part on the absence of any other cause. Dr. Nichols later stated, "I'm not claiming intent. I'm claiming that she died as a result of somebody else's actions."

The State also presented the testimony of John Pressley, who met Commander while they were both serving prison time at the Alvin S. Glenn Detention Center. Pressley testi-

---

**3.** The trial court relied on the opinion of Maine's Supreme Judicial Court in *State v. Young,* 662 A.2d 904 (Me.1995), in which the court held that a medical examiner's testimony that the victim's death was a homicide neither exceeded the examiner's area of expertise nor invaded the province of the factfinder. The opinion explained that the trial court could prevent any potential prejudice by explaining that the term "homicide" merely distinguishes death caused by another human being from accidental and natural deaths and suicide.

fied that Commander approached him to obtain assistance with a petition for a writ of habeas corpus and that they had several conversations about Commander's pending murder charge. Pressley recounted Commander asking him the following question:

What do you think if I told my attorney to tell them that she, the victim, hit me in the head with a stick, we had an argument and she hit me in the head with a stick and I fell unconscious and fell on top of her, and when I regained consciousness she had died from being suffocated?

Pressley stated that he told Commander that no one was going to believe that account of events. Pressley also indicated that Commander later told him that he had an argument with Goodwin, that she hit him with a stick and made him angry, and that he fell on her and suffocated her. Pressley further stated, "I asked him were you unconscious, and he said, no, he wasn't unconscious, he suffocated her." On cross-examination, Pressley repeated Commander's question regarding what he should tell his attorney:

And he asked me a question, what did I think, he wanted my opinion. If he had this lawyer . . . what did I think if he told his lawyer to tell the State that his girlfriend, the victim, hit him in the head with a stick and he fell unconscious and fell on her and when he was—when he regained consciousness that she had died from suffocation because he was on her, he fell on top of her. And I told him, no one is going to believe this.

At the conclusion of trial, defense counsel requested the trial court to charge the jury on the defenses of self-defense and accident, but the trial court declined to do so. As to Dr. Nichols' testimony, the trial court charged the jury that they were not to place any expert opinions "above the idea of your own opinions on the subject, but you are to consider these opinions along with all the other evidence in the case in forming your own conclusions." The jury found Commander guilty of murder, and the trial court sentenced Commander to life imprisonment without the possibility of parole. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in allowing Dr. Nichols to give his opinion that the "suspicious circumstances" surrounding Goodwin's death indicated a homicide when that opinion was not based on scientific, technical, or other specialized knowledge that would assist the jury in understanding the evidence or in determining a disputed fact as required by Rule 702, SCRE?

2. Did the trial court err in declining to charge the jury on the defense of accident?

## STANDARD OF REVIEW

The conduct of a criminal trial is left largely to the discretion of the trial court, and this Court will not interfere unless the rights of the appellant were prejudiced. *State v. Bridges*, 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). As such, this Court reviews errors of law only and is bound by the trial court's factual determinations unless they are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).

## LAW/ANALYSIS

### I. *Admission of Expert Testimony*

Commander asserts that the trial court erred in admitting Dr. Nichols' opinion that the "suspicious circumstances" surrounding Goodwin's death indicated a homicide because that opinion was not based on scientific, technical, or other specialized knowledge that would assist the jury in understanding the evidence or in determining a disputed fact. We conclude that Commander was not prejudiced by the admission of this opinion into evidence.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Rule 103, SCRE. In other words, to warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both the error of the ruling and the resulting prejudice. *Vaught v. A.O. Hardee & Sons, Inc.*, 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005); *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005).

██ To establish prejudice, the appellant must convince this Court that there is a reasonable probability that the jury's verdict was influenced by the challenged evidence. *Fields,* 363 S.C. at 26, 609 S.E.2d at 509. Here, Commander argues that he was prejudiced by Dr. Nichols' opinion detailing the "suspicious circumstances" of Goodwin's death because it misled the jurors into substituting his opinion for their own judgment on matters not requiring specialized knowledge.

██ Assuming, arguendo, that the admission of this opinion violated Rule 702, SCRE, Commander was not prejudiced. Dr. Nichols later explained to the jury that in concluding that Goodwin's death was a homicide, he was not purporting to give an opinion on "intent," but was rather attempting to establish the manner of death—that Goodwin died as a result of somebody else's actions. Further, during the course of giving standard jury instructions, the trial court advised the jury that they were not to place any expert opinions above the idea of their own opinions on the subject at hand, but that they were to consider expert opinions along with all the other evidence in the case in forming their own conclusions. Such an instruction is consistent with established South Carolina law. "The same tests which are commonly applied in the evaluation of ordinary evidence are to be used in judging the weight and sufficiency of expert testimony." *State v. Douglas,* 380 S.C. 499, 503, 671 S.E.2d 606, 609 (2009);[4] *see also State v. White,* 382 S.C. 265, 269, 271, 676 S.E.2d 684, 686, 687 (2009) (holding that the trial court properly instructed the jury that they were to give expert dog handler's testimony such weight and credi-

---

4. In *Douglas,* the defendant, who had been convicted of committing a lewd act on a minor, argued that the trial court erred in qualifying a witness who had interviewed the victim as an expert in forensic interviewing and in admitting her testimony that, based on the interview, she concluded that a medical evaluation was necessary. *Id.* at 500–01, 671 S.E.2d at 607. The defendant argued that the witness' testimony was prejudicial because the jury likely gave her testimony undue weight simply because of her qualification as an expert. *Id.* at 503, 671 S.E.2d at 609. The Court held that the disputed testimony was not required to be presented by an expert witness, but that the defendant was not prejudiced by her qualification as an expert because such qualification did not require the jury to accord her testimony any greater weight than that given to any other witness. *Id.* at 502–03, 671 S.E.2d at 608–09.

bility as they deemed appropriate as with any and all witnesses testifying at trial). "As with any witness, the jury is free to accept or reject the testimony of an expert witness." *Douglas,* 380 S.C. at 503, 671 S.E.2d at 609.

In any event, the admission of the disputed testimony was harmless in light of the overwhelming evidence of Commander's guilt. *See State v. Mizzell,* 349 S.C. 326, 333, 563 S.E.2d 315, 318 (2002) (holding that whether error is harmless depends on the facts of each case, including the importance of challenged testimony in prosecution's case, whether the testimony was cumulative, presence or absence of evidence corroborating or contradicting testimony on material points, extent of cross-examination otherwise permitted, and overall strength of prosecution's case). Therefore, the admission of Dr. Nichols' testimony does not warrant reversal. *See* Rule 103, SCRE (stating that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected); *State v. Mitchell,* 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) (holding that error is harmless when it could not reasonably have affected the result of the trial).

## II. *Jury Charge on Accident*

Commander argues that the trial court erred in failing to instruct the jury on the defense of accident. We disagree.

If a killing is unintentional and occurs "while the perpetrator [is] engaged in a lawful enterprise, and [is] not the result of negligence, the homicide will be excused on the score of accident." *State v. Brown,* 205 S.C. 514, 521, 32 S.E.2d 825, 828 (1945).

"The law to be charged must be determined from the evidence presented at trial." *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000). In determining whether the evidence requires a charge of accident, the Court views the facts in a light most favorable to the defendant. *Cf. State v. Byrd,* 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996) (charging voluntary manslaughter). However, an instruction should not be given unless justified by the evidence. *State v. Moultrie,* 273 S.C. 532, 533, 257 S.E.2d 730, 731 (1979). "If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury." *State v. Blurton,* 352 S.C. 203, 208, 573 S.E.2d 802, 804 (2002). This Court will not

reverse the trial court's ruling regarding jury instructions unless the trial court abused its discretion. *State v. Williams,* 367 S.C. 192, 195, 624 S.E.2d 443, 445 (Ct.App.2005).

 Commander points to John Pressley's testimony as evidence of an accident. Commander cites *State v. Knoten,* 347 S.C. 296, 555 S.E.2d 391 (2001), for the proposition that inconsistencies in the evidence must not deprive a defendant of the benefit of evidence supporting a jury charge on a lesser-included offense. In *Knoten,* our Supreme Court held that a jury charge on voluntary manslaughter was required when the evidence included a confession that showed sufficient legal provocation despite other evidence showing that the defendant later recanted the confession. *Id.* at 308–09, 555 S.E.2d at 397–98.

Even if we disregard Commander's admission to Pressley that he was not unconscious when he fell on Goodwin, Commander's earlier strategy session with Pressley indicated that Commander merely sought advice on what to tell his attorney. In our view, this does not constitute evidence of an accident. Therefore, the trial court acted well within its discretion in declining to charge the jury on the defense of accident.

## CONCLUSION

Accordingly, Commander's conviction is
**AFFIRMED.**

SHORT and THOMAS, JJ., concur.