722 S.E.2d 820

The **STATE**, Respondent,

v.

**Jomar Antavis ROBINSON, Appellant.**

No. 4942.

Court of Appeals of South Carolina.

Heard Oct. 3, 2011.

Decided Feb. 15, 2012.

Rehearing Denied March 29, 2012.

Appellate Defender Elizabeth Franklin–Best, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Attorney General Harold M. Coombs, and Solicitor Kevin Brackett, all of Columbia, for Respondent.

WILLIAMS, J.

Jomar Antavis Robinson (Robinson) was convicted of possession of crack cocaine with intent to distribute, possession of crack cocaine with intent to distribute within one-half mile of a public park, unlawful carrying of a pistol, possession of marijuana, and resisting arrest. The circuit court sentenced Robinson to life imprisonment. Robinson appeals, arguing the circuit court erred in (1) denying Robinson's motion to suppress drugs found as a result of an illegal search and seizure; and (2) allowing the State to qualify the Commander of the Drug Enforcement Unit as an expert witness. We affirm.

## FACTS/PROCEDURAL HISTORY

On March 20, 2010, Sergeant Rayford Louis Ervin, Jr. (Ervin) with the York County Drug Enforcement Unit (the Drug Enforcement Unit) conducted surveillance of the Hall Street Apartments in response to numerous anonymous complaints of criminal activity in the area. Ervin stated he

observed conduct consistent with drug transactions and called for back-up. Lieutenant James M. Ligon (Ligon) and Officer Brian Schettler (Schettler) with the Drug Enforcement Unit responded. Upon their arrival, Ervin informed the officers he observed an individual, wearing a black leather jacket, meeting vehicles that pulled into the parking lot, going up to the vehicles' windows for a short time, and then returning to the porch of an apartment.

Ligon and Schettler approached the porch and smelled a strong odor of marijuana. Of the five individuals on the porch, two men were wearing black jackets matching Ervin's description. Ligon and Schettler asked the men for their identification. Ligon noticed one of the individuals, later identified as Robinson, had a pistol hanging out of the right pocket of his jacket. Ligon told the two individuals he could smell marijuana and see Robinson's pistol, and he was going to conduct a *Terry*[1] search. As Robinson began to retreat, both Ligon and Robinson reached for Robinson's pistol, and a fight between Ligon and Robinson ensued. During the struggle, Robinson's jacket fell to the ground and Robinson fled the scene. Ligon pursued him, and after an altercation, Ligon placed Robinson in handcuffs. Once Robinson was in custody, Schettler searched the inside of Robinson's jacket and found the pistol, a bag containing marijuana, and a bag containing crack cocaine.

A York County grand jury indicted Robinson for possession of crack cocaine with intent to distribute, possession of crack cocaine with intent to distribute within one-half mile of a public park, unlawful carrying of a pistol, possession of marijuana, and resisting arrest.

Robinson moved in limine to suppress the pistol, marijuana, and crack cocaine found in Robinson's pocket, arguing the contents of his jacket were the result of an illegal search. The circuit court denied this motion finding the search did not violate Robinson's Fourth Amendment rights; Robinson did not have an expectation of privacy on the porch; and the officers had reasonable suspicion to investigate. When the State introduced the pistol and crack cocaine into evidence during trial, Robinson timely objected. However, despite his

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

motion in limine to suppress the marijuana, Robinson offered the bag of marijuana into evidence during the cross-examination of one of the State's witnesses as a trial strategy.[2]

The State called Commander Marvin Brown (Commander Brown) of the Drug Enforcement Unit as a witness. The State offered Commander Brown as an expert in "how crack cocaine is packaged, sold, the going price, the typical intoxicating dose, and the different habits between the typical addict, the user, and the typical drug dealer." Robinson objected, arguing Commander Brown was not qualified as an expert witness under Rule 702 of the South Carolina Rules of Evidence. After voir dire of Commander Brown, the circuit court concluded he was qualified to testify as an expert.

Following the State's case-in-chief, Robinson moved for a directed verdict. In addition, Robinson renewed his motion to suppress the evidence obtained from the search, but he specifically conceded the marijuana was admissible based on his introduction of the marijuana during trial. The court denied Robinson's motions. Robinson was convicted of all charges and was subsequently sentenced to life imprisonment pursuant to section 17–25–45 of the South Carolina Code (Supp.2010).[3] This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court reviews errors of law only. *State v. Butler*, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003). The appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).

---

**2.** Robinson's attorney affirmed at trial he introduced the marijuana into evidence as a trial strategy.

**3.** Pursuant to section 17–25–45, upon conviction of possession of crack cocaine with intent to distribute within one-half mile of a public park:

"[A] person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has two or more prior convictions for: (1) a serious offense; (2) a most serious offense; (3) a federal or out-of-state offense that would be classified as a serious offense or most serious offense under this section; or (4) any combination of the offenses listed in (1), (2), and (3) above."

## LAW/ ANALYSIS

### I. Motion to Suppress

Robinson argues the marijuana and cocaine were improperly admitted at trial because they were obtained in an unlawful manner. We disagree.

#### a. Marijuana

Robinson introduced the marijuana into evidence during his cross-examination of Ligon; therefore, he cannot now complain of its admission on appeal. *See State v. Johnson,* 298 S.C. 496, 498, 381 S.E.2d 732, 733 (1989) (holding a defendant who expressly consented to the admission of evidence at trial waived any right to raise the issue of admissibility on appeal); *State v. O'Neal,* 210 S.C. 305, 312, 42 S.E.2d 523, 526 (1947) (holding a defendant may not complain of admission of evidence when he introduced the same kind of evidence on cross-examination); *State v. Beam,* 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct.App.1999) (holding a defendant cannot complain about the admission of evidence on appeal when he opened the door to the introduction of that evidence).

#### b. Crack Cocaine

Robinson argues the circuit court erred in admitting the crack cocaine at trial when (1) he had a reasonable expectation of privacy on the porch; and (2) Ligon and Schettler entered without a warrant and in the absence of exigent circumstances. We disagree and address each argument in turn.

##### i. Expectation of Privacy

Robinson contends the search was in violation of his Fourth Amendment rights because he had an expectation of privacy on the porch. We disagree.

For Robinson to establish a Fourth Amendment violation, he must show a legitimate expectation of privacy on the porch. *See State v. Missouri,* 361 S.C. 107, 112, 603 S.E.2d 594, 596 (2004) ("To claim protection under the Fourth Amendment of the U.S. Constitution, defendants must show that they have a legitimate expectation of privacy in the place searched."). "A legitimate expectation of privacy is both

subjective and objective in nature: the defendant must show (1) he had a subjective expectation of not being discovered, and (2) the expectation is one that society recognizes as reasonable." *Id.* (quoting *Oliver v. U.S.*, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)).

"A reasonable expectation of privacy exists in property being searched when the defendant has a relationship with the property or property owner." *State v. Flowers,* 360 S.C. 1, 5, 598 S.E.2d 725, 728 (Ct.App.2004). While an overnight guest may have a reasonable expectation of privacy in the host's property, "a person present only intermittently or for a purely commercial purpose does not have a reasonable expectation of privacy." *Id.*

Here, the circuit court found Robinson did not have the same expectation of privacy as he would have in his own home. Robinson did not live in the apartment connected to the porch or any apartment located in the Hall Street Apartment complex. Furthermore, there is no evidence he was an overnight guest or otherwise had a connection to the premises or apartment lessee to give him a reasonable expectation of privacy. Robinson failed to establish he had an expectation of not being discovered on the porch, nor did he ask the police to leave. *See In the Matter of Bazen,* 275 S.C. 436, 436, 272 S.E.2d 178, 178 (1980) (finding the defendant did not have a subjective expectation of privacy in an open garage when he had an opportunity to demonstrate an expectation of privacy or ask the police to leave, but instead did nothing). Therefore, Robinson failed to show he had a reasonable expectation of privacy on the porch.

### ii. Reasonable Suspicion

Robinson also argues Ligon and Schettler violated his Fourth Amendment rights because they entered the porch without a warrant and in the absence of exigent circumstances. We disagree.

"A police officer may stop and briefly detain and question a person for investigative purposes, without treading upon his Fourth Amendment rights, when the officer has a reasonable suspicion supported by articulable facts, short of probable cause for arrest, that the person is involved in

criminal activity." *State v. Taylor*, 388 S.C. 101, 109, 694 S.E.2d 60, 64 (Ct.App.2010) (quoting *State v. Blassingame*, 338 S.C. 240, 248, 525 S.E.2d 535, 539 (Ct.App.1999)). " 'Reasonable suspicion' requires a 'particularized and objective basis that would lead one to suspect another of criminal activity.' " *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) (quoting *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In determining whether reasonable suspicion exists, the totality of the circumstances should be evaluated. *State v. Corley*, 383 S.C. 232, 240, 679 S.E.2d 187, 191 (Ct.App.2009). While anonymous tips do not supply the indicia of reliability to establish reasonable suspicion, an "anonymous tip can provide the basis of an investigatory stop if the officer conducting the stop verifies the tip's reliability by observing the suspect engaged in criminal activity." *Taylor*, 388 S.C. at 114, 694 S.E.2d at 66. The officer's experience and intuition is an additional factor to consider in determining whether reasonable suspicion exists. *Id.* at 116, 694 S.E.2d at 68.

Here, the circuit court held:

> [T]aking the totality of the circumstances, the officer's knowledge about the area, what had been reasonably observed, that there were anonymous tips, the police officers investigation and observing the area, ... the drug transactions [that] were going on in the parking lot based on an officer's knowledge of what drug transactions look like in those situations, ... they are going there simply to determine the identification of the people who are there, ... heightened by the fact that they smelled the green marijuana, and heightened by the fact that they saw a weapon hanging out of the defendant's pocket. So all of that, taking the totality of the circumstances they would have reasonable suspicion to investigate further and to pat down the defendant. . . .

■ Ligon and Schettler testified to specific and articulable facts to show they had reasonable suspicion that criminal activity was afoot. Based on Ervin's observation of conduct consistent with drug transactions, Ligon and Schettler approached the porch, and Ligon asked for Robinson's identification. Ligon and Schettler both testified this was a consensual encounter, and Robinson could have terminated the encounter

at any time. *See State v. Foster*, 269 S.C. 373, 380, 237 S.E.2d 589, 592 (1977) (holding an officer's request to see identification does not constitute a seizure within the meaning of the Fourth Amendment). The fact that the officers smelled marijuana as they approached the porch reasonably heightened their suspicion. *See State v. Banda*, 371 S.C. 245, 253, 639 S.E.2d 36, 40 (2006) (holding the court recognizes there is an "indisputable nexus between drugs and guns" to justify a frisk for weapons when an officer has reasonable suspicion that drugs are present) (internal citation omitted). When Schettler saw the pistol hanging out of Robinson's jacket pocket, he had reasonable suspicion to frisk Robinson for weapons. We find the police had reasonable suspicion to stop Robinson, and thus did not violate his Fourth Amendment rights.

Accordingly, we affirm the circuit court's denial of Robinson's motion to suppress the crack cocaine.

## II. Expert Witness Qualification

■ Robinson next argues the circuit court erred in qualifying Commander Brown as an expert witness. We disagree.

■ A person is competent as an expert when he or she has acquired knowledge, skill, or experience so that he or she is better able than the jury to form an opinion on the subject matter. Rule 702, SCRE; *see also Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997) ("To be competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.'") (internal citation omitted). "An expert is not limited to any class of persons acting professionally." *Id.* at 252, 487 S.E.2d at 598 (internal citation omitted). "The party offering the expert has the burden of showing his witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony." *State v. Schumpert*, 312 S.C. 502, 505, 435 S.E.2d 859, 861 (1993). However, defects in the amount or quality of education or experience go to the weight of the expert's testimony and not its admissibility. *State v. Myers*, 301 S.C. 251, 256, 391 S.E.2d 551, 554 (1990).

Robinson questioned Commander Brown regarding writings, publications, and experience in the area of narcotics enforcement. Commander Brown indicated he wrote an article in a national magazine for the United States Attorney's Office detailing how the Drug Enforcement Unit was organized. He testified he teaches three classes: search and seizure, asset forfeiture, and basic narcotics. In addition, Commander Brown makes an annual appearance as a guest instructor at a commander's school for the United States Attorney's Office regarding drug enforcement and drug trends. Commander Brown testified he was the narcotics supervisor for over twenty years. Further, he stated he worked on the first crack cocaine case in York County and has observed crack cocaine "evolve as to how it's packaged and sold throughout the years, especially ... in York County." Moreover, Commander Brown stated he had been qualified more than six times as an expert in previous state court criminal cases in "how cocaine is packaged, sold, the going price, the typical intoxicating dose." Commander Brown also affirmed that he has been qualified as an expert in federal court twice on the same subject matter.

We find Commander Brown's thirty years of experience in narcotics enforcement coupled with his involvement in hundreds of crack cocaine cases sufficient to qualify him as an expert on this topic. *See State v. Henry,* 329 S.C. 266, 273, 495 S.E.2d 463, 466 (Ct.App.1997) ("There is no abuse of discretion as long as the witness has acquired by study or practical experience such knowledge of the subject matter of his testimony as would enable him to give guidance and assistance to the jury in resolving a factual issue which is beyond the scope of the jury's good judgment and common knowledge.").

Moreover, because the qualification of Commander Brown did not require the jury to give his testimony any greater weight than that given to a lay witness, Robinson did not suffer any prejudice from Commander Brown's expert qualification. *See State v. Douglas,* 380 S.C. 499, 503, 671 S.E.2d 606, 609 (2009) (finding a defendant was not prejudiced by the witness's expert qualification because the fact that the witness was qualified as an expert did not require the jury to accord her testimony any greater weight than that given to

any other witness); *State v. White,* 382 S.C. 265, 271, 676 S.E.2d 684, 687 (2009) (finding the circuit court properly instructed the jury to give the expert witness's testimony "such weight and credibility as you deem appropriate as you will with any and all witnesses that will testify at this trial"); *State v. Commander,* 384 S.C. 66, 75, 681 S.E.2d 31, 35 (Ct.App.2009) ("As with any witness, the jury is free to accept or reject the testimony of an expert witness.") (internal citation omitted).

The State offered Commander Brown's testimony to advise the jury as to how crack cocaine was sold and packaged, which is information not commonly known to the average juror. Further, this information would aid the jury in determining whether Robinson intended to distribute the crack cocaine or only possessed the crack cocaine for personal use. Therefore, the circuit court did not abuse its discretion in qualifying Commander Brown as an expert witness.

## CONCLUSION

Accordingly, the circuit court's rulings are

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.