# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jomar Antavis Robinson, Petitioner.

Appellate Case No. 2012-212042

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From York County
Lee S. Alford, Circuit Court Judge

---

Opinion No. 27463
Heard June 19, 2014 – Filed November 12, 2014

---

## AFFIRMED AS MODIFIED

---

Appellate Defender David Alexander, of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General Salley W. Elliott,
both of Columbia, and Solicitor Kevin Scott Brackett, of
York, for Respondent.

---

**CHIEF JUSTICE TOAL:**     Jomar Robinson (Petitioner) appeals the court of
appeals' decision affirming his convictions for possession of crack cocaine with

intent to distribute (PWID), PWID within one-half mile of a public park, unlawful carrying of a pistol, possession of marijuana, and resisting arrest. *See State v. Robinson*, 396 S.C. 577, 722 S.E.2d 820 (Ct. App. 2012). We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

On Thursday, March 20, 2008, the York Police Department received several anonymous complaints that people were selling drugs and carrying weapons outside of the Hall Street Apartments in York, South Carolina. Starting at 10:00 p.m., Sergeant Rayford Ervin, a police officer working with the York County Drug Enforcement Unit, stood in a wooded area across the street from the apartment complex and used a pair of binoculars to conduct covert surveillance.

Over the next half hour, five cars stopped in front of Apartment 122, where five men stood on the porch of that unit. Each time a car stopped, the same man wearing a black jacket and blue jeans walked from the porch to the car, spoke briefly with the car's occupants, conducted a "hand to hand transaction," and then rejoined the other four men on the porch. As a veteran narcotics officer, Ervin found "that type of activity [] consistent with drug sales," particularly because Thursdays tend to "have more drug dealing activity going on." He therefore called for backup.

At 10:30 p.m., Lieutenant James Ligon and Officer Brian Schettler parked in front of Apartment 122 with the illuminated headlights pointed towards the porch. Ligon and Schettler identified themselves as police officers and walked onto the porch of Apartment 122. At that point, the five men standing on the porch were standing in two groups, with two men wearing black jackets and jeans—Laquaris Patton and Petitioner—on the left side of the porch, and the other three men (none of whom were wearing jackets) on the right side.[1] Because of Ervin's description of the potential drug dealer's clothing, the officers were primarily interested in Patton and Petitioner. Ligon asked both men for identification, which they readily provided.

While Ligon inspected the two drivers' licenses, both officers began to smell a strong odor of green marijuana emanating from Petitioner's side of the porch. Further, Ligon noticed the butt of a gun protruding from the pocket of Petitioner's

---

[1] The other three men's names were Odarius Williams, Jerome Neely, and Travis Walton. The Record is unclear which man rented Apartment 122, although it is clear that Petitioner did not rent the apartment.

jacket.  As a result, Ligon informed Patton and Petitioner that the officers were going to conduct a *Terry*[2] frisk for drugs and weapons.

At that point, Petitioner began to back away from the officers, and, in fear for his safety, Ligon lunged for and seized the gun, immediately before Petitioner also reached for it.  A struggle ensued, during which Petitioner's jacket fell to the ground.  Petitioner fled the scene, abandoning his jacket.  Ligon pursued Petitioner, and after another brief scuffle, subdued and arrested Petitioner.  After Ligon brought Petitioner back to Apartment 122, Schettler searched Petitioner's discarded jacket and found a semiautomatic pistol, a bag containing 3.2 grams of marijuana, a bag containing 0.84 grams of loose crack cocaine rocks, and a bag containing 2.97 grams of crack cocaine rocks packaged in eleven individually wrapped bags.

Prior to his trial, Petitioner made a motion to suppress the gun and drugs, claiming that the police conducted a warrantless search and seizure of him on the curtilage of Apartment 122, and that the gun and drugs were obtained after the officers illegally entered on the property.  The trial court denied the motion to suppress, finding that Petitioner did not have a reasonable expectation of privacy on the porch of Apartment 122, and that the officers, possessing a reasonable suspicion to investigate, entered the property merely to talk to the men on the porch and request their identifications.

At trial, after Ligon testified on behalf of the State, but before the State had formally introduced the gun or drugs into evidence, defense counsel introduced the bag of marijuana during cross-examination of Ligon in an attempt to discredit the officer.[3]  Later in the trial, Petitioner objected to the State introducing the gun and the bags of crack cocaine into evidence.

Ultimately, the jury convicted Petitioner of PWID, PWID within one-half mile of a public park, unlawful carrying of a pistol, possession of marijuana, and resisting arrest.  The trial court sentenced Petitioner to life without the possibility of parole.  *See* S.C. Code Ann. § 17-25-45 (2014).

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

[3] Petitioner sought to prove that Ligon lied about the strong odor of green marijuana on the night of his arrest, and questioned Ligon regarding whether he could smell the bagged marijuana from certain distances.

Petitioner appealed, arguing that the trial court erred in refusing to suppress the gun and drugs.  The court of appeals affirmed the trial court's decision.  *See Robinson*, 396 S.C. at 577, 722 S.E.2d at 820.  Specifically, the court of appeals summarily dismissed Petitioner's contention that the trial court should have suppressed the marijuana, finding that because Petitioner introduced the marijuana during his cross-examination of Ligon, he waived his objection to the marijuana.  *Id.* at 583, 722 S.E.2d at 823.  Further, the court of appeals found that (1) Petitioner was not a resident or overnight guest of Apartment 122, and thus did not have a reasonable expectation of privacy on the porch of the apartment; and (2) the police had reasonable suspicion to enter the porch without a warrant and conduct a *Terry* frisk.  *Id.* at 583–86, 722 S.E.2d at 823–24.[4]

This appeal followed.

## ISSUE

Whether Petitioner established that his Fourth Amendment rights were violated by the officers' entry onto the porch of Apartment 122?

## STANDARD OF REVIEW

In criminal cases, appellate courts sit to review errors of law only, and are therefore bound by the trial court's factual findings unless clearly erroneous.  *State v. Tindall*, 388 S.C. 518, 520, 698 S.E.2d 203, 205 (2010); *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001).  Because the admission of evidence is within the sound discretion of the trial court, appellate courts should not reverse the decision of the trial court absent an abuse of discretion.  *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011) (defining an abuse of discretion as a decision "'based on an error of law, or, when grounded in factual conclusions, [a decision] without evidentiary support'" (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000))).

---

[4] Petitioner also contended that the trial court erred in qualifying one of the State's witnesses as an expert.  The court of appeals affirmed the trial court's decision to qualify the witness as an expert, *see Robinson*, 396 S.C. at 586–88, 722 S.E.2d at 825–26, and Petitioner does not challenge that ruling here.

ANALYSIS

The Fourth Amendment to the United States Constitution protects the people's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; *cf.* S.C. Const. art. I, § 10. At its core, the Fourth Amendment "stands [for] the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). Accordingly, warrantless searches and seizures inside a man's home are presumptively unreasonable absent a recognized exception to the warrant requirement. *United States v. Karo*, 468 U.S. 705, 714–15 (1984); *Wright*, 391 S.C. at 442, 706 S.E.2d at 327.[5] Likewise, the Fourth Amendment extends the same protection to a home's curtilage, including a porch. *Florida v. Jardines*, 133 S. Ct. 1409, 1414–15 (characterizing the front porch as a "classic exemplar" of the curtilage); *accord State v. Herring*, 387 S.C. 201, 209, 692 S.E.2d 490, 494 (2009).

However, "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 352 (1967). For this reason, mere visual observations from public thoroughfares do not constitute a search, *United States v. Jones*, 132 S. Ct. 945, 953 (2012), and police officers need not "shield their eyes" when passing by a home, *California v. Ciraolo*, 476 U.S. 207, 213 (1986). Rather, the Fourth Amendment is not triggered unless a person has an actual and reasonable expectation of privacy, *Katz*, 389 U.S. at 361 (Harlan, J., concurring), or unless the government commits a common-law trespass for the purpose of obtaining information, *Jones*, 132 S. Ct. at 949.

Moreover, "'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *accord State v. Hiott*, 276 S.C. 72, 78, 276 S.E.2d 163, 166 (1981). Thus, while the Fourth Amendment protects people, and not places, "the extent to which

---

[5] Even searches conducted under facts unquestionably showing probable cause are unconstitutional absent a warrant, "for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer be interposed between the citizen and the police.'" *Katz v. United States*, 389 U.S. 347, 357 (1967) (alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963)).

the Fourth Amendment protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134; *Alderman*, 394 U.S. at 171–72.

This is not to say that a person cannot have a "legally sufficient interest" in a place other than his own home. *Rakas*, 439 U.S. at 142–43. Rather, to claim the protection of the Fourth Amendment, a defendant must demonstrate that he had an actual and reasonable expectation of privacy in the place searched. *Carter*, 525 U.S. at 88 (quoting *Rakas*, 439 U.S. at 143–44 & n.12); *State v. McKnight*, 291 S.C. 110, 115, 352 S.E.2d 471, 473 (1987); *see also Rakas*, 439 U.S. at 136–39 (rejecting the "target theory," in which anyone who was the target of an illegal search has an automatic right to challenge the search, regardless of where the search occurred).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure" by demonstrating he had an expectation of privacy in the area illegally searched. *Rakas*, 439 U.S. at 130 n.1; *accord Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980); *State v. Crane*, 296 S.C. 336, 340–41, 372 S.E.2d 587, 589 (1988); *see also In re Bazen*, 275 S.C. 436, 437–38, 272 S.E.2d 178, 178 (1980) ("If the officer was not to approach [an open garage where a disturbance was occurring] . . . , appellant had ample opportunity to in some manner demonstrate an expectation of privacy in the garage. Instead, he did nothing." (citing *State v. Easterling*, 257 S.C. 239, 185 S.E.2d 366 (1971)). In determining whether the criminal defendant met his burden, courts may consider factors such as:

    a. whether the defendant owned the home or had property rights to it;[6]

    b. whether he was an overnight guest at the home;[7]

---

[6] *United States v. Salvucci*, 448 U.S. 83, 91 (1980).

[7] *Carter*, 525 U.S. at 90; *Minnesota v. Olson*, 495 U.S. 91, 93, 96–97 & n.6 (1990); *State v. Missouri*, 361 S.C. 107, 110, 115, 603 S.E.2d 594, 595, 597 (2004); *State v. Flowers*, 360 S.C. 1, 6, 598 S.E.2d 725, 728 (Ct. App. 2004).

c. whether he kept a change of clothes at the home;[8]

d. whether he had a key to the home;[9]

e. whether he had dominion and control over the home and could exclude others from the home;[10]

f. how long he had known the owner of the home;[11]

g. how long he had been at the home;[12]

h. whether he attempted to keep his activities in the home private;[13]

i. whether he engaged in typical domestic activities at the home, or whether he treated it as a commercial establishment;[14]

j. whether he alleged a proprietary or possessory interest in the premises and property seized (even if only at a motion to suppress,

---

[8] *Olson*, 495 U.S. at 97 n.6; *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597; *Flowers*, 360 S.C. at 6, 598 S.E.2d at 728.

[9] *Rakas*, 439 U.S. at 149 (discussing *Jones v. United States*, 362 U.S. 257 (1960), *overruled on other grounds by Salvucci*, 448 U.S. at 85); *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597.

[10] *Rawlings*, 448 U.S. at 105; *Rakas*, 439 U.S. at 149 (discussing *Jones*, 362 U.S. at 257); *Flowers*, 360 S.C. at 6, 598 S.E.2d at 728.

[11] *Carter*, 525 U.S. at 91; *Rawlings*, 448 U.S. at 105; *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597.

[12] *Carter*, 525 U.S. at 90; *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597.

[13] *Olson*, 495 U.S. at 99; *Rawlings*, 448 U.S. at 105; *Rakas*, 439 U.S. at 149 (discussing *Katz*, 389 U.S. at 352); *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597; *Bazen*, 275 S.C. at 437–38, 272 S.E.2d at 178.

[14] *Carter*, 525 U.S. at 90–91; *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597.

where that admission cannot be used against him to determine his guilt)[15]; and

k. whether he paid rent at the home.[16]

As an initial matter, the parties dispute who had the burden of proving the alleged illegality of the police officers' actions here. Each party has the burden to prove separate things during the motion to suppress. The State bears the burden to demonstrate that it was entitled to conduct the search or seizure under an exception to the Fourth Amendment's warrant requirement. *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013). The State also bears the burden to show that the warrantless entry was limited in scope and duration in accordance with the exigent circumstances which required its presence. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

However, the criminal defendant retains the burden to establish that he is asserting his own Fourth Amendment rights, rather than vicariously asserting the rights of others; therefore, the defendant bears the burden to demonstrate that he had an actual and reasonable expectation of privacy in the place illegally searched. *Rakas*, 439 U.S. at 130 n.1. Here, assuming *arguendo* that the police officers committed a Fourth Amendment violation when they entered the porch of Apartment 122 without a warrant, the burden rests with Petitioner to establish that he had a reasonable expectation of privacy in the porch of Apartment 122.

Petitioner failed to carry his burden, as he produced no testimony whatsoever that would implicate any of the factors set forth, *supra*, demonstrating that he had an expectation of privacy in the porch of Apartment 122. At no point did Petitioner claim to be the renter, an overnight guest, or have any other connection to Apartment 122. Thus, we find that Petitioner was "merely present with the consent of the householder," and as such, did not have a reasonable

---

[15] *Rawlings*, 448 U.S. at 105; *Rakas*, 439 U.S. at 148; *Crane*, 296 S.C. at 340–41, 372 S.E.2d at 589; *Neeley*, 271 S.C. at 43, 244 S.E.2d at 528 (quoting *Brown v. United States*, 411 U.S. 223, 229 (1973)); *but see Salvucci*, 448 U.S. at 92 ("We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.").

[16] *Missouri*, 361 S.C. at 110, 115, 603 S.E.2d at 595, 597; *Flowers*, 360 S.C. at 6, 598 S.E.2d at 728.

expectation of privacy on the porch of Apartment 122. *See Carter*, 525 U.S. at 90; *accord Robinson*, 396 S.C. at 584, 722 S.E.2d at 823–24 ("Furthermore, there is no evidence [Petitioner] was an overnight guest or otherwise had a connection to the premises or apartment lessee to give him a reasonable expectation of privacy. [Petitioner] failed to establish that he had an expectation of not being discovered on the porch, nor did he ask the police to leave.").

Petitioner contends that our consideration of his expectation of privacy in the porch of Apartment 122 is both unnecessary and inappropriate. Citing *United States v. Jones*[17] and *Florida v. Jardines*,[18] Petitioner argues that any time the police commit an unauthorized trespass onto private property, the trespass is per se a violation of the Fourth Amendment, which anyone can assert; therefore, there is no need to engage in an expectation of privacy analysis. We disagree.

In both *Jones* and *Jardines*, the Supreme Court found that the police officers who conducted warrantless searches of the defendants' property committed Fourth Amendment violations, solely because of the officers' unauthorized entry onto and use of the defendants' property. In so finding, the Supreme Court focused primarily on a common law trespass test, involving licenses to enter and use private property. *See, e.g.*, *Jardines*, 133 S. Ct. at 1415–17.

Importantly, in both cases, the Supreme Court noted that the defendants were the owners of the property searched, or otherwise definitively had the right to assert any alleged Fourth Amendment violations.[19] Thus, because the Government's trespasses violated the *Jones* and *Jardines* defendants' *own* Fourth Amendment rights, the Supreme Court was not required to address the interplay between the trespass test and the defendants' reasonable expectations of privacy. *See, e.g.*, *Jones*, 132 S. Ct. at 950; *cf. Rakas*, 439 U.S. at 133–34 ("'Fourth

---

[17] 132 S. Ct. 945 (2012).

[18] 133 S. Ct. 1409 (2013).

[19] *See Jardines*, 133 S. Ct. at 1413 (stating that the criminal defendant was the homeowner); *Jones*, 132 S. Ct. at 949 n.2 (stating that the criminal defendant's wife owned the vehicle searched, that the criminal defendant was the exclusive driver of the vehicle, that the Government did not challenge the court of appeals' holding that "the vehicle registration did not affect his ability to make a Fourth Amendment objection," and that the Supreme Court therefore refused to consider whether the defendant had a reasonable expectation of privacy in the vehicle).

Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" (quoting *Alderman*, 394 U.S. at 174)).

As an example of this interplay, if the police commit a warrantless trespass on a homeowner's land, and search and seize the homeowner or his property, the homeowner clearly could assert a Fourth Amendment violation because he would be asserting *his own* right to be free of governmental searches and seizures on his own property. The homeowner would satisfy both *Jones* and *Katz*, because not only could he demonstrate an unauthorized trespass, but also that he had a reasonable expectation of privacy in his home.

In contrast, here we are presented the situation in which a casual guest wishes to assert an alleged trespass on *another's* property. Petitioner maintains that the officers' entry onto the curtilage of Apartment 122 satisfies *Jones*'s trespass test, and that consideration of Petitioner's reasonable expectation of privacy under *Katz* is thus irrelevant. We cannot accept such a proposition, as it ignores the factual dissimilarities between his own case and the defendants in *Jones* and *Jardines*—particularly, the lack of any substantial connection to the property allegedly trespassed upon.

Today we hold that, even if the ultimate Fourth Amendment violation a criminal defendant seeks to vindicate is a trespass under *Jones*, the defendant must demonstrate that he had an actual and reasonable expectation of privacy in the area upon which the police illegally trespassed. *See Rakas*, 439 U.S. at 130 n.1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). In doing so, we merely reaffirm the long-standing notion that a defendant must establish that his own Fourth Amendment rights were violated by the illegal entry, rather than vicariously asserting the Fourth Amendment rights of the property owner. In other words, establishing that an illegal trespass occurred is not enough to satisfy the Fourth Amendment. *Cf. Jones*, 132 S. Ct. at 960 (quoting *Karo*, 468 U.S. at 713 ("[A]n actual trespass is neither necessary nor sufficient to establish a constitutional violation.")); *Rakas*, 439 U.S. at 136–39 (finding "targets" of illegal searches do not have an automatic right to challenge the search, regardless of where the search occurred).

Accordingly, because Petitioner made no showing that he had a reasonable expectation of privacy in the porch of Apartment 122, he failed to establish that his

Fourth Amendment rights were violated.  We find the court of appeals did not err in affirming the trial court's refusal to suppress the illegal drugs and gun.[20]

## CONCLUSION

For the foregoing reasons, the court of appeals' opinion is

**AFFIRMED AS MODIFIED.**

**HEARN, J. concurs. PLEICONES, BEATTY and KITTREDGE, JJ., concurring in result only.**

---

[20] Because Petitioner did not establish that he had a reasonable expectation of privacy in the place searched, we decline to address whether the officers' conduct was in fact illegal, as well as whether Petitioner waived his right to object to the admission of the marijuana.  *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when determination of prior issue is dispositive).