763 S.E.2d 36

The STATE, Respondent,

v.

Jason Alan JOHNSON, Appellant.

Appellate Case No. 2012–207549.

No. 5246.

Court of Appeals of South Carolina.

Heard March 6, 2014.
Decided June 30, 2014.
Rehearing Denied Sept. 3, 2014.

Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., of Columbia, for Respondent.

THOMAS, J.

Jason Alan Johnson appeals his conviction for trafficking methamphetamine in an amount of twenty-eight grams or more, but less than one hundred grams. Johnson argues the circuit court erred in (1) denying his motion to suppress evidence stemming from a warrant he alleges was obtained without probable cause after an illegal entry and warrantless search, and (2) ruling as a matter of law that all of the mixture that contained methamphetamine would count towards its weight, admitting such evidence, and ordering defense counsel not to argue that fact to the jury, which Johnson contends violated statutory intent and the Sixth Amendment. We affirm.

**FACTS/PROCEDURAL HISTORY**

On February 27, 2011, an arrest warrant was issued for Brandi Quinn for malicious injury to property. That morning, York County Sheriff's Deputy John Stagner located Quinn's car at the Best Way Inn in Rock Hill. Deputy Stagner kept

watch on Quinn's car and called for backup, after which Deputies Rachel Gladden and Tony Bolin arrived at the hotel. The deputies verified with hotel management which room Quinn was staying in and learned that she had checked into the hotel the previous day. Before approaching Quinn's room, Deputy Gladden informed the other deputies that there would probably be drugs in the room.[1] The deputies then approached Quinn's room and knocked. Quinn did not immediately come to the door; instead, the deputies heard movement and whispering within the room. After a few minutes, Quinn partially opened the door but remained largely concealed behind it, which caused the deputies to worry that Quinn was concealing something or someone behind the door.

Quinn backed further into the room and the deputies entered the room to execute the arrest warrant. Upon entering the room, the deputies observed two persons under the covers of the beds, possibly trying to hide. The deputies ordered the two individuals under the bed covers to show their hands. One individual, Corey Catoe, complied with the deputies' orders and showed his hands, while the other individual, Johnson, showed his hands twice but put them back under the covers. The deputies testified they became increasingly concerned for their safety because of the possibility Johnson was concealing a weapon. At that point, the deputies detained Catoe and Johnson and observed gang-related tattoos on Johnson.

After detaining Catoe and Johnson, Deputies Bolin and Stagner performed a protective sweep of the hotel room, which included the bathroom and under the beds. The deputies testified the purpose of the protective sweep was to look for weapons or other individuals in the room out of concern for officer safety. During the protective sweep of the room, Deputies Bolin and Stagner observed computer equipment throughout the room, much of it disassembled.[2] The deputies

---

1. Deputy Gladden testified that prior to her arrival at the hotel, she received information from a family member of Quinn that Quinn might be under the influence of methamphetamine.

2. From our reading of Deputy Bolin's testimony, these computers were immediately visible upon the deputies' initial entrance into the room. According to Deputy Bolin, he believed the computers might be stolen,

also observed syringes, razor blades, a white ash substance on the floor, and aluminum foil consistent with drug packaging. Deputy Stagner testified he observed a digital scale during the protective sweep. According to Deputy Stagner, the deputies did not open, move, or manipulate anything during the protective sweep. Quinn's arrest, the detention of Catoe and Johnson, and the protective sweep all occurred in a short amount of time. Deputy Stagner testified these events happened simultaneously.

Deputy Gladden called another deputy in order to obtain a search warrant from a magistrate, and the procured search warrant stated the following reason for searching the hotel room:

> Deputies arrested a female suspect from this room on a warrant for malicious injury to property. While deputies were in the room, deputies observed numerous laptop computers and electronic equipment, two unused capped syringes, a package of razor blades, and multiple small tin foil packages consistent with that of drug packaging. The female suspect taken into custody also has a prior drug related conviction.

It took approximately one hour for the search warrant to arrive at the scene, and during that time the deputies remained at the room but did not fully search it. After the warrant arrived, law enforcement found a bottle containing a mixture of liquid and methamphetamine. The mixture within the bottle was being processed in the "Shake and Bake" method of methamphetamine production, under which some of the materials within the bottle are strained off during the production process. Investigator Nick Schifferle testified a reaction within the bottle had already produced methamphetamine; however, further steps were needed to create usable methamphetamine. According to Schifferle, the mixture within the bottle was treated as hazardous waste, as it was in an

---

as the deputies had information that people were stealing computers and obtaining personal information from the computers' hard drives. Deputy Stagner testified the number of computers in the room was suspicious considering that Quinn had checked into the room the previous day, and he thought the individuals may have been using computer parts in narcotics production.

"extremely dangerous" state that could have caused an explosion.

Johnson was indicted for trafficking methamphetamine and the case proceeded to a jury trial in York County. Initially, Johnson was tried with Catoe. Johnson joined his co-defendant's pretrial motion to suppress evidence obtained in the search of the hotel room, contending that the search was illegal. During the suppression hearing, the State offered testimony regarding the search warrant and the underlying basis for the deputies' entry into the hotel room. At the end of the hearing, the circuit court ruled the evidence should not be suppressed and was admissible, finding the protective sweep was justified to ensure the deputies' safety. The circuit court also found the plain view exception applied to the evidence in the hotel room. Catoe entered a guilty plea amidst the suppression hearing.

Johnson joined Catoe's motion *in limine* contending that only the weight of the finished product of methamphetamine should count towards the weight of the substance. During the State's case, Johnson reiterated that argument in objecting to testimony concerning the weight of the mixture of liquid and methamphetamine and asserting the weight of the mixture should not come into evidence. The circuit court stated that, as it read the relevant statutes concerning methamphetamine, the legislature intended for the weight of methamphetamine to include the weight of any material, compound, mixture, or preparation containing methamphetamine. Subsequently, the circuit court ruled that all of the mixture would count as methamphetamine. After the circuit court's ruling, defense counsel objected on the ground that the statute was overly broad and unconstitutional; this objection was overruled. Additionally, the circuit court prohibited defense counsel from making any argument to the jury that all of the mixture could not be considered methamphetamine. The jury found Johnson guilty of trafficking methamphetamine in an amount of twenty-eight grams or more, but less than one hundred grams, and the circuit court sentenced him to twenty-eight years' imprisonment. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in denying Johnson's motion to suppress evidence stemming from a warrant he alleges

was obtained without probable cause after an illegal entry and warrantless search?

II. Did the circuit court err in ruling as a matter of law that all of the mixture which contained methamphetamine would count towards its weight, admitting such evidence, and ordering defense counsel not to argue that fact to the jury?

## STANDARD OF REVIEW

■■■ " 'In criminal cases, the appellate court sits to review errors of law only.' " *State v. Williams*, 386 S.C. 503, 509, 690 S.E.2d 62, 65 (2010) (quoting *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001)). "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011) (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)).

## LAW/ANALYSIS

### I. Circuit Court's Denial of Johnson's Motion to Suppress Evidence

Johnson argues the exigent circumstances and search incident to arrest exceptions do not apply to this case, as Quinn had been arrested and posed no threat prior to the deputies' search of the hotel room. He maintains that even if the deputies' claims regarding potential danger had merit, any danger was precipitated by their needless, warrantless entry into the room. Johnson claims the circuit court erred in ruling the plain view exception applied, as the deputies' initial intrusion affording them the plain view was not lawful. Additionally, he asserts the incriminating nature of the evidence was not immediately apparent, as the deputies only observed computer equipment during their initial entry into the room. Johnson contends the deputies observed the other evidence listed in the warrant after repeatedly entering and re-entering the room. Therefore, Johnson considers all of the evidence

from the hotel room to be fruit of the poisonous tree that should have been suppressed.

"When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm if there is any evidence to support the ruling." *State v. Wright,* 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). "The appellate court will reverse only when there is clear error.'" *Id.* (citing *State v. Missouri,* 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004)). "[T]his deference does not bar this Court from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence." *State v. Tindall,* 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010).[3]

Generally, a warrantless search is *per se* unreasonable and thus violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *State v. Abdullah,* 357 S.C. 344, 350, 592 S.E.2d 344, 348 (Ct.App.2004). "However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule." *Id.* "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *State v. Herring,* 387 S.C. 201, 210, 692 S.E.2d 490, 494 (2009) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19

---

**3.** In *State v. Morris,* 395 S.C. 600, 720 S.E.2d 468 (Ct.App.2011), this court considered the scope of an appellate court's review of the record in a Fourth Amendment case:

> *Tindall* articulated the standard of review subsequently repeated in *Wright.* However, *Tindall's* ensuing discussion included a footnote explaining that this standard of review requires a two-part analysis: (1) whether the record supports the trial court's factual findings and (2) whether those factual findings establish reasonable suspicion or probable cause. *See Tindall,* 388 S.C. at 523 n. 5, 698 S.E.2d at 206 n. 5 ("While we acknowledge that we review under the deferential 'any evidence' standard, this Court still must review the record to determine if the trial judge's ultimate determination is supported by the evidence. In short, we must ask first, whether the record supports the trial court's assumed findings ... and second, whether these facts support a finding that the officer had reasonable suspicion of a serious crime to justify continued detention of Tindall." (citation omitted)).

*Morris,* 395 S.C. at 606 n. 2, 720 S.E.2d at 471 n. 2 (alteration in original).

L.Ed.2d 576 (1967)). "The exigent circumstances doctrine provides an exception to the Fourth Amendments [sic] protection against warrantless searches, but only where, from an objective standard, a compelling need for official action and no time to secure a warrant exist." *Abdullah*, 357 S.C. at 351, 592 S.E.2d at 348. A warrantless search is justified under the exigent circumstances doctrine where there is a risk of danger to police. *Id.* (citing *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). "In such circumstances, a protective sweep of the premises may be permitted." *Id.* (citing *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

 In the present case, the deputies approached Quinn's hotel room to execute an arrest warrant. After the deputies knocked, Quinn delayed coming to the door for a few minutes; during that time the deputies heard movement and whispering from within the room. Quinn eventually cracked the door open, remaining largely concealed behind it, which caused the deputies to become concerned and uneasy about what Quinn might have been concealing behind the door. As the deputies entered the room to arrest Quinn, they observed computers throughout the room in various states of disassembly. Deputies Bolin and Stagner both suspected these computers might have been used in illegal activity. Additionally, the deputies saw Catoe and Johnson in the room's beds under the covers, possibly hiding. After the deputies ordered them to show their hands, Catoe complied but Johnson twice showed his hands and put them back under the covers, which caused the deputies to worry that Johnson had a weapon. Deputy Stagner detained Johnson and observed gang-related tattoos on him. The deputies immediately performed a protective sweep of the room out of concern for officer safety; according to Deputy Stagner these events in the hotel room all happened simultaneously. We find these circumstances rightfully compelled the protective sweep to ensure the deputies' safety. *See State v. Brown*, 289 S.C. 581, 587, 347 S.E.2d 882, 886 (1986) (finding that a protective sweep of a motel room was

justified because it was reasonable to believe that concealed persons within the room might pose a danger); *Abdullah,* 357 S.C. at 351, 592 S.E.2d at 348 (noting a protective sweep may be permitted under the exigent circumstances doctrine where there is a risk of danger to police); *id.* at 352, 592 S.E.2d at 348 (holding the totality of the circumstances gave officers reasonable grounds from an objective standard for a search of the premises with a goal of securing the scene against perpetrators); *id.* at 352, 592 S.E.2d at 349 (stating it was improvident to presuppose that subduing the defendant foreclosed the officers' objectively reasonable need to perform a protective sweep of the premises). While Johnson claims the deputies viewed the evidence by improperly entering and re-entering the room while waiting for the warrant, the deputies testified that the evidence giving rise to probable cause was all visible during the protective sweep. The deputies maintained they did not manipulate the evidence in any way. Additionally, the reasonableness of the deputies' conduct can be inferred from their decision to obtain a search warrant before fully searching the room. *See Abdullah,* 357 S.C. at 352, 592 S.E.2d at 348 (holding "the reasonableness of the officers' conduct may be further gleaned from the decision to secure a warrant to seize the contraband once the protective sweep was concluded and exigent circumstances unquestionably ceased to exist").

We disagree with Johnson's contention that this case resembles the facts of *Brown,* 289 S.C. 581, 347 S.E.2d 882, in which our supreme court found exigent circumstances did not excuse a warrantless search. In *Brown,* law enforcement never obtained an arrest or search warrant despite performing surveillance of a murder suspect's motel room for two and one-half hours. *Id.* at 586, 347 S.E.2d at 885. Law enforcement eventually called the suspect via phone and ordered him and any others to exit the room. *Id.* After the suspect and others exited the room and were arrested, law enforcement performed a protective sweep of the room. *Id.* Our supreme court noted that the protective sweep was justified because it was reasonable to believe that concealed persons within the room might pose a danger. *Id.* at 587, 347 S.E.2d at 886. However, the court held the State failed to meet its burden of proof to justify the warrantless search under the exigent circumstances exception because the State could not explain

law enforcement's failure to obtain any type of warrant during the lengthy surveillance period. *Id.* at 587–88, 347 S.E.2d at 886. Such facts are distinguishable from the case at hand, as the deputies had a valid arrest warrant and the entry and protective sweep of the hotel room were immediately incident to executing that arrest warrant.

"Under the 'plain view' exception to the warrant requirement, objects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence." *State v. Beckham,* 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999). To satisfy the "plain view" exception, two elements must be met: "(1) the initial intrusion which afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities." *Wright,* 391 S.C. at 443, 706 S.E.2d at 327.

We find the initial intrusion which afforded the authorities the plain view of the evidence was lawful. The validity of Quinn's arrest warrant has not been challenged, and "police are allowed to enter a hotel room to arrest an occupant when acting pursuant to a valid arrest warrant." *Goins v. State,* 397 S.C. 568, 574, 726 S.E.2d 1, 4 (2012). Johnson claims in his brief that Quinn was in custody when the deputies entered the hotel room, and thus the initial warrantless search of the room was illegal. He cites *United States v. Coles,* 437 F.3d 361, 366 (3d Cir.2006) for the proposition that "[e]xigent circumstances, however, do not meet Fourth Amendment standards if the government deliberately creates them." However, each of the deputies testified that they entered the hotel room to arrest Quinn after she backed further into the room; therefore, the deputies' initial intrusion into the room was justified by the execution of a valid arrest warrant. Furthermore, as the deputies' protective sweep shortly after entering the room was justified through the exigent circumstance of ensuring officer safety, the deputies' intrusion that afforded them the plain view of the evidence was lawful.

We also find the incriminating nature of the evidence was immediately apparent to the deputies. Upon initially

entering the room, the deputies observed an inordinate number of computers, many in states of disassembly. Deputy Bolin testified the presence of multiple disassembled computers constituted probable cause that a crime had been committed because of the "amount of time that [the occupants] were in the hotel room, the amount of computers in the hotel room, and the work that was being done to them." He suspected the computers had been stolen and were being used to extract personal information from the hard drives. Deputy Stagner stated the large number of computers and equipment was suspicious given that Quinn had checked into the hotel the previous day; he also noted that computers could be used in manufacturing narcotics. During the protective sweep, the deputies observed two uncapped syringes, a package of razor blades, and aluminum foil packaging consistent with drug packaging. While not stated in the search warrant, Deputy Stagner also observed a digital scale. The deputies considered this evidence indicative of illegal drug activity.

The testimony presented at the suppression hearing indicated that the incriminating nature of the evidence in the hotel room was immediately apparent to the deputies. Furthermore, Deputy Gladden testified that prior to her arrival at the hotel, she received information that Quinn might be under the influence of methamphetamine. Based on the totality of the circumstances, we find the magistrate had a substantial basis for concluding probable cause existed to justify the issuance of a search warrant. *See State v. Bellamy,* 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999) (stating a magistrate may issue a search warrant only upon a finding of probable cause); *State v. Weston,* 329 S.C. 287, 290, 494 S.E.2d 801, 802 (1997) ("A reviewing court should give great deference to a magistrate's determination of probable cause."); *State v. Davis,* 354 S.C. 348, 356, 580 S.E.2d 778, 782 (Ct.App.2003) (noting that a magistrate making a probable cause determination should " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place' " (alteration in original) (quoting *Illinois v. Gates,* 462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983))); *State v. Dupree,* 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct.App.2003) ("An appellate court

reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. This review, like the determination by the magistrate, is governed by the 'totality of the circumstances' test." (internal citations omitted)). The search warrant obtained for the hotel room was properly founded on probable cause resulting from items in plain view of deputies lawfully conducting a protective sweep. Therefore, we hold the circuit court acted within its discretion in admitting the evidence obtained in the search of the hotel room.

## II. Circuit Court's Rulings Concerning the Weight of Methamphetamine

■ Section 44–53–375(C) of the South Carolina Code (Supp.2013) [4] states:

(C) A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of methamphetamine or cocaine base, as defined and otherwise limited in Section 44–53–110, 44–53–210(d)(*l*), or 44–53–210(d)(2), is guilty of a felony which is known as "trafficking in methamphetamine or cocaine base" . . . .

The statute goes on to prescribe sentencing based on the amount of methamphetamine involved. *See* S.C.Code Ann. § 44–53–375(C)(2) (Supp.2013) (setting the punishment for "trafficking in methamphetamme or cocaine base" in an amount of twenty-eight grams or more, but less than one hundred grams).

Section 44–53–110 of the South Carolina Code (Supp.2013) [5] defines methamphetamme: " 'Methamphetamme' includes any

---

4. The code provision in effect at the time Johnson committed the offense in 2011 has not since been amended; thus, we cite to the current version of section 44–53–375.

5. Section 44–53–110 has recently been amended by 2014 S.C. Laws Acts 221. The relevant language quoted here is not affected by the amendment, but it is now found at subsection 44–53–110(28).

salt, isomer, or salt of an isomer, *or any mixture or compound containing amphetamine or methamphetamme.* Methamphetamine is commonly referred to as 'crank', 'ice', or 'crystal meth'" (emphasis added). Additionally, subsection 44–53–210(d)(2) (Supp.2013) [6] states Schedule II narcotics include: "Unless specifically excepted or unless listed in another schedule, *any material, compound, mixture, or preparation which contains any quantity of the following substances* having a stimulant effect on the central nervous system: ... *Methamphetamine, its salts, and salts of isomers*" (emphasis added). In regards to the weight of controlled substances, section 44–53–392 of the South Carolina Code (Supp.2013) [7] states, "Notwithstanding any other provision of this article, the weight of any controlled substance referenced in this article is the weight of that substance in pure form *or any compound or mixture thereof*" (emphasis added).

The language of section 44–53–392, which defines the weight of methamphetamine as "the weight of that substance in pure form or any compound or mixture thereof," is plain and unambiguous, and clearly and definitely includes a mixture containing liquid and methamphetamine. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *State v. Jacobs,* 393 S.C. 584, 587, 713 S.E.2d 621, 622 (2011). "As such, a court must abide by the plain meaning of the words of a statute." *Id.* "This Court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation.'" *Grazia v. S.C. State Plastering, LLC,* 390 S.C. 562, 569, 703 S.E.2d 197, 200 (2010) (quoting *Ward v. West Oil Co., Inc.,* 387 S.C. 268, 273–74, 692 S.E.2d 516, 519 (2010)). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). " 'What a legislature

6. The code provision in effect at the time Johnson committed the offense in 2011 has not since been amended; thus, we cite to the current version of section 44–53–210.

7. The code provision in effect at the time Johnson committed the offense in 2011 has not since been amended; thus, we cite to the current version of section 44–53–392.

says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature.'" *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992)). We are convinced the plain and ordinary meaning of the statute defines the weight of methamphetamine to include the weight of the mixture of liquid and methamphetamine at issue in this case.

We do not agree with Johnson's contention that the legislature requires the methamphetamine to be usable methamphetamine, nor do we agree that the statute disregards the weight of byproducts in the manufacturing process. Subsection 44–53–376(A) of the South Carolina Code (Supp.2013)[8] states, "It is unlawful for a person to knowingly cause to be disposed any waste from the production of methamphetamine or knowingly assist, solicit, or conspire with another to dispose of methamphetamine waste." Johnson cites subsection 44–53–376(A) in arguing that South Carolina drug statutes recognize that methamphetamine contains unusable by-products, and "any mixture" of methamphetamine was not intended to include the waste from the production of the drug. We disagree with this argument, as the plain and unambiguous language of sections 44–53–110, 44–53–210, 44–53–375, and 44–53–392 clearly and definitely includes a mixture containing liquid and methamphetamine. Additionally, section 44–53–392 of the South Carolina Code (Supp.2013) states, *"Notwithstanding any other provision of this article,* the weight of any controlled substance referenced in this article is the weight of that substance in pure form or any compound or mixture thereof"* (emphasis added).

Johnson argues the circuit court improperly relied on *State v. Kerr,* 299 S.C. 108, 382 S.E.2d 895 (1989), in ruling on this issue. In *Kerr,* our supreme court held section 44–53–370, by its clear and unambiguous terms, applied to the weight of a mixture containing cocaine and not merely the weight of the cocaine in its pure form. *Id.* at 109, 382 S.E.2d at 896. The court then quoted from *Sheriff of Humboldt Cnty. v. Lang,*

---

**8.** The code provision in effect at the time Johnson committed the offense in 2011 has not since been amended; thus, we cite to the current version of section 44–53–376.

104 Nev. 539, 763 P.2d 56, 58–59 (1988), to express the rationale behind the statute, explaining that diluted cocaine increases the amount of consumption and potential harm. *Kerr*, 299 S.C. at 109–10, 382 S.E.2d at 896–97. Johnson points out that this rationale does not exist with respect to unfinished mixtures of methamphetamine. However, the circuit court never attributed the reasoning expressed in *Kerr* and *Lang* to the methamphetamine statute; in fact, the court noted that this reasoning would not apply to an unfinished mixture of methamphetamine. Instead, the circuit court found that the statutory language regarding methamphetamine was similar to the unambiguous statutory language in *Kerr*, and the court presumed the legislature had considered the "extremely dangerous" process of manufacturing methamphetamine. The statutory language deemed clear and unambiguous in *Kerr* read, "The weight of any controlled substance in this subsection includes the substance in pure form or any compound or mixture of the substance." *Id.* at 109, 382 S.E.2d at 896 (emphasis omitted) (quoting S.C.Code Ann. § 44–53–370(e) (1985)). This language is nearly identical to the language of section 44–53–392, which we find similarly clear and unambiguous.

Johnson notes that some federal and state courts use the "market-oriented" approach when determining the weight of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (setting the punishment for a violation involving "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers"); *Chapman v. United States,* 500 U.S. 453, 461, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) ("Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence."). We find this argument unpersuasive. Unlike the states from which Johnson cited case law [9], we find no authority, either in statute or in

9. Johnson cited *State v. Magness,* 165 S.W.3d 300, 303–04 (Tenn.Crim. App.2004), and *State v. Slovik,* 188 Or.App. 263, 71 P.3d 159, 161–63 (2003).

common law, in which this state has adopted or modeled itself after federal drug sentencing laws or the Federal Sentencing Guidelines, which distinguish between methamphetamine and a mixture of methamphetamine.

Johnson also contends the circuit court violated his Sixth Amendment right to a jury trial when the court precluded him from arguing to the jury that the entire weight of the mixture could not be counted against him. He alleges this error deprived him of a trial by jury on an essential element of the offense. *See Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting a criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt" (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995))). We find the circuit court did not err in precluding Johnson from making this argument to the jury, as this argument is an erroneous statement of law. *See State v. Portee*, 278 S.C. 260, 261, 294 S.E.2d 421, 422 (1982) (finding it improper when a prosecutor made an erroneous statement of law to the jury).[10]

## CONCLUSION

For all of the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

HUFF and PIEPER, JJ., concur.

---

10. As we do not find the circuit court erred in concluding the weight of the mixture was to be considered, we need not address the State's harmless error argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when its determination of a prior issue is dispositive).