803 S.E.2d 876

**The STATE, Respondent,**

v.

**John William DOBBINS Jr., Appellant.**

**Appellate Case No. 2013-002134**

**Opinion No. 5496**

Court of Appeals of South Carolina.

Heard April 11, 2017

Filed July 12, 2017

Rehearing Denied September 21, 2017

584

Appellate Defender Taylor Davis Gilliam, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Deputy Attorney General David A. Spencer, both of Columbia, and Solicitor David M. Stumbo, of Greenwood, for Respondent.

WILLIAMS, J.:

In this criminal appeal, John William Dobbins Jr. appeals his convictions for manufacturing methamphetamine, possession with intent to distribute methamphetamine, unlawful disposal of methamphetamine waste, possession of a schedule-two controlled substance, and possession of a schedule-four controlled substance. Dobbins asserts the circuit court erred in denying his motion to suppress because law enforcement officers violated the Fourth Amendment by entering his backyard and home without a warrant. We affirm.

**FACTS/PROCEDURAL HISTORY**

Early in the morning on November 24, 2011, officers with the Laurens County Sheriff's Office received a report of an assault in Waterloo, South Carolina. The victim identified his assailant as Shayla Gaines and reported that Gaines returned to her residence—a camper located approximately three miles away. Four officers went to the camper's address around 3:00 A.M. with the intent of arresting Gaines.[1]

During his in camera testimony, Deputy Hodges stated he was familiar with the residence prior to arriving at the camper because he knew Dobbins "professionally" and knew Dobbins lived at that address. Deputy Hodges stated that, upon arrival, Corporal Nick Moye—one of the four initial responding officers—went to the rear of the camper to "make sure everything was [secure]," while Deputy Hodges and Lieutenant Marlon Higginbotham went to the front door of the camper. While walking to the front door of the camper, the officers noticed the unmistakable and "overwhelming" odor of meth-

---

1. The four officers did not have an arrest warrant for Gaines.

amphetamine being manufactured.[2] Deputy Hodges then knocked several times on the camper's door, prompting Dobbins to answer. Once Dobbins opened the door, Deputy Hodges announced they were with the sheriff's department and stated they were searching for Gaines. At that point, Dobbins "slammed the door in [their] face," and the two officers forced the door open and entered the camper.

Once inside the camper, Deputy Hodges noted the methamphetamine odor intensified. While the officers did not find Gaines in their search of the camper, they did find methamphetamine, methamphetamine by-product, scales, and a white, powdery substance in plain view on the countertops. Additionally, officers found an active "one pot" methamphetamine lab—a plastic bottle that was emitting smoke and contained all the ingredients for making methamphetamine—sitting on the toilet in the bathroom. Deputy Hodges testified they "went back out and asked [Dobbins] to sign a consent to search form" when they realized Gaines was not in the camper.[3] After obtaining Dobbins' consent, officers conducted a more thorough search of Dobbins' camper and found more items associated with manufacturing methamphetamine.

Dobbins was indicted for manufacturing methamphetamine, possession with intent to distribute methamphetamine, unlawful disposal of methamphetamine waste, and two counts of possession of a controlled substance. Prior to trial, Dobbins moved to suppress all evidence seized from his residence because "it was obtained without a search warrant when [officers] entered the premises." The State asserted exigent circumstances existed—officers were searching for Gaines and smelled methamphetamine—permitting the officers to make a warrantless entry. After hearing Deputy Hodges' in camera testimony, the circuit court denied Dobbins' motion to sup-

---

**2.** While testifying both at the pretrial hearing and at trial, Deputy Hodges described the odor as a "strong chemical smell" that "burns your nose" and "takes your breath," specifically noting that it smells similar to "Coleman camp fuel mixed in with other chemicals." Deputy Hodges further stated it was a "one in a million" smell.

**3.** After the initial sweep of the camper, Dobbins was detained and subsequently signed a consent to search form while in the presence of Corporal Moye. Dobbins did not challenge the validity of his consent to search in this appeal.

press and explained exigent circumstances justified the initial entry into the camper.[4]

The jury convicted Dobbins on all counts following trial. The circuit court sentenced Dobbins to concurrent terms of imprisonment of one year for the two possession offenses, five years for unlawful disposal of methamphetamine waste, twenty-five years for manufacturing methamphetamine, and twenty-five years for possession with intent to distribute methamphetamine. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Williams*, 386 S.C. 503, 509, 690 S.E.2d 62, 65 (2010) (quoting *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001)). "The admission of evidence is within the discretion of the [circuit] court and will not be reversed absent an abuse of discretion." *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Johnson*, 410 S.C. 10, 17, 763 S.E.2d 36, 40 (Ct. App. 2014) (quoting *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011)). "In an appeal from a motion to suppress evidence based on Fourth Amendment grounds, an appellate court may conduct its own review of the record to determine whether the evidence supports the circuit court's decision." *State v. Abdullah*, 357 S.C. 344, 349–50, 592 S.E.2d 344, 347 (Ct. App. 2004).

## LAW/ANALYSIS

### I. Exigent Circumstances

Dobbins asserts the circuit court erred in denying his motion to suppress because the State failed to prove exigent circumstances supported their intrusions under the Fourth Amendment and the seizure of evidence from Dobbins' home resulted directly and indirectly from their violations. We disagree.

---

4. In particular, the circuit court noted the officers were justified in their search because the camper had "the potential of being moved," the officers smelled methamphetamine, and Dobbins was uncooperative.

 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures through its exclusionary rule. U.S. Const. amend IV. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). An individual in a private residence normally expects privacy, free of governmental intrusion not authorized by a warrant, and society recognizes this as a justifiable expectation. *State v. Herring*, 387 S.C. 201, 209, 692 S.E.2d 490, 494 (2009). As such, a warrantless search is inherently unreasonable, and thus, it violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Johnson*, 410 S.C. at 18, 763 S.E.2d at 41.

 Nevertheless, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Herring*, 387 S.C. at 210, 692 S.E.2d at 494 (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Under the Fourth Amendment, an action is reasonable "as long as the circumstances, viewed objectively, justify [the] action." *Herring*, 387 S.C. at 210, 692 S.E.2d at 494 (alteration in original) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "In the Fourth Amendment context, a court is concerned with determining whether a reasonable officer would be moved to take action." *State v. Wright (Wright 2016 )*, 416 S.C. 353, 369, 785 S.E.2d 479, 487 (Ct. App. 2016) (quoting *State v. Wright (Wright 2011 )*, 391 S.C. 436, 444, 706 S.E.2d 324, 328 (2011))). When a warrantless search falls within one of the well-established exceptions to the Fourth Amendment's warrant requirement, the search will survive constitutional scrutiny. *Abdullah*, 357 S.C. at 350, 592 S.E.2d at 348.

 "To survive a Fourth Amendment challenge to a warrantless search, the State must establish the officer had probable cause and demonstrate one of the exceptions to the prohibition against warrantless searches and seizures applies." *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015). "The exigent circumstances doctrine provides an exception to the Fourth Amendment['s] protection against warrantless

searches, but only where, from an objective standard, a compelling need for official action and no time to secure a warrant exist." *Abdullah*, 357 S.C. at 351, 592 S.E.2d at 348. Under the exigent circumstances exception, "[a] fairly perceived need to act on the spot may justify [an officer's warrantless] entry and search ...." *Herring*, 387 S.C. at 210, 692 S.E.2d at 494 (citing *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). The Fourth Amendment does not prevent an officer from making a warrantless entry and search if the officer reasonably believes there is a risk that the evidence will be destroyed before he or she can obtain a search warrant. *See United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) ("The police need not ... produce concrete proof that the occupants of the room were on the verge of destroying evidence; rather, the proper inquiry focuses on what an objective officer could reasonably believe."); *id.* (finding a reasonable officer could "reasonably conclude" that a room's occupants would try to dispose of drug evidence before an officer could obtain a warrant, especially when police had already identified themselves prior to smelling the odor of marijuana).

▇▇▇▇▇▇ Exigent circumstances—such as imminent destruction of evidence, the potential for a suspect to flee, or a risk of danger to police or others—may justify a warrantless entry, but absent hot pursuit, there must be at least probable cause to believe the exigent circumstances were present. *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). "Probable cause is a 'commonsense, nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Morris*, 411 S.C. at 580, 769 S.E.2d at 859 (alterations in original) (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013) (quoting *Wortman v. City of Spartanburg*, 310 S.C. 1, 4, 425 S.E.2d 18, 20 (1992)). "[D]etermining whether an officer has probable cause to conduct a warrantless search depends on

the totality of the circumstances." *Morris*, 411 S.C. at 581, 769 S.E.2d at 859. The distinctive odor of a drug alone is a sufficient basis to establish probable cause when a law enforcement official, familiar with the unique smell of that drug, recognizes its odor. *See State v. Lane*, 271 S.C. 68, 72, 245 S.E.2d 114, 116 (1978) ("[I]t is evident that the odor [of marijuana] emanating from the packages alone was a sufficient basis to establish probable cause as to their contents when it is considered that an officer of the law, familiar with the odor of marijuana, believed the odor being emitted was that of marijuana.").

▮ Initially, we note Dobbins argues officers violated the Fourth Amendment when they entered into the curtilage of his residence—his backyard—without an exigent circumstance justifying their presence. However, upon our review of the record, we find Dobbins failed to raise this argument to the circuit court at the suppression hearing. Specifically, we note that, in issuing its ruling, the circuit court stated it found "exigent circumstances existing to justify the initial entry *into the residence*." (emphasis added). Moreover, the circuit court did not address what area was included in the curtilage of the camper. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (identifying the four factors courts should consider in deciding whether an area is part of the curtilage of the home). Thus, we find this aspect of Dobbins' argument is not preserved for appellate review. *See State v. Moore*, 357 S.C. 458, 464, 593 S.E.2d 608, 612 (2004) (holding an issue must be raised to and ruled upon by the circuit court to be preserved for appellate review); *see also State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal.").

▮ Next, evidence in the record supports finding the officers had probable cause. Testimony during the pretrial hearing and at trial established Deputy Hodges' familiarity with the "one in a million" smell of methamphetamine from prior experience. Moreover, the reporting officers testified to the almost immediate presence of a strong odor of methamphetamine on the premises when they arrived. Therefore, we find that, given his prior experience with the unique odor of methamphetamine, Deputy Hodges' detection of the odor upon

his arrival at the camper was a sufficient basis for establishing probable cause. *See Lane*, 271 S.C. at 72, 245 S.E.2d at 116.

Last, Dobbins asserts the circuit court erred in finding the State presented sufficient evidence to support its intrusion under the Fourth Amendment because the State alleged the following two exigent circumstances: (1) the need to find Gaines and (2) the investigation of the presence of methamphetamine. Conversely, the State asserts the odor of an active methamphetamine lab created an exigent circumstance requiring immediate action due to the risk associated with methamphetamine production and the realistic danger that Dobbins would destroy evidence after he realized law enforcement was at his door.

Given the totality of the circumstances, including Dobbins' behavior and the presence of the unmistakable odor of methamphetamine, we find an objective officer in a similar situation would be justified to conduct a warrantless search of the camper to prevent the destruction of the drugs and protect the safety of the officers and others. Specifically, we find a cognizable risk to others existed based on the inherently dangerous nature of methamphetamine labs. Further, we find the officers were faced with an immediate threat of evidence being destroyed. *See Grissett*, 925 F.2d at 778 ("[Because] the police had identified themselves before smelling the marijuana, an officer could reasonably conclude that the occupants of the room would attempt to dispose of the evidence before the police could return with a warrant. This is especially true in the case of an easily disposable substance like drugs."); *see also Abdullah*, 357 S.C. at 352, 592 S.E.2d at 348 (holding the totality of the circumstances gave officers reasonable grounds from an objective standard for a search of the premises). In the instant case, the officers were following up on a report of domestic violence. They arrived at the camper, and almost immediately, they detected the strong odor of methamphetamine. Moreover, after announcing themselves and their intentions at the door of the camper, they encountered a very uncooperative Dobbins. Both of these factors lend support for our conclusion the officers had no time to secure a search warrant because of exigent circumstances.

Therefore, we find the circuit court did not err in denying Dobbins' motion to suppress because the State presented

sufficient evidence of exigent circumstances to justify a warrantless entry of Dobbins' camper.

## II. Plain View Exception

Dobbins argues the circuit court erred in denying his motion to suppress evidence because the seizure of evidence from his home resulted directly and indirectly from the Fourth Amendment violations. We disagree.

Under the plain view exception, "objects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence." *State v. Beckham*, 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999). "The two elements needed to satisfy the plain view exception are (1) the initial intrusion that afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities." *Wright 2016*, 416 S.C. at 368, 785 S.E.2d at 487.

We affirm the denial of the motion to suppress evidence because the plain view doctrine presents an exception to the Fourth Amendment's warrant requirement. As previously discussed in Part I, we find the initial intrusion, which afforded the officers the plain view, was lawful. Moreover, the second element of the plain view exception is met because Deputy Hodges—who was experienced in methamphetamine detection—testified to finding methamphetamine, methamphetamine by-product, scales, and a white, powdery substance in plain view on the countertops and a "one pot" lab in the bathroom. We find the discovery of methamphetamine in conjunction with the distinct odor of methamphetamine emanating from the camper fully satisfy the second element. Thus, because the two elements of the plain view exception are met, we affirm the findings of the circuit court.

## CONCLUSION

Based on the foregoing analysis, the circuit court's denial of Dobbins' motion to suppress the evidence is

**AFFIRMED.**

KONDUROS, J., and LEE, A.J., concur.