**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

General T. Little, Appellant.

Appellate Case No. 2018-000561

Appeal From Charleston County
Thomas L. Hughston, Jr., Circuit Court Judge

Unpublished Opinion No. 2021-UP-196
Heard January 12, 2021 – Filed June 9, 2021
Withdrawn, Substituted and Refiled July 21, 2021

**AFFIRMED**

Vordman Carlisle Traywick, III, of Robinson Gray Stepp
& Laffitte, LLC, and Chief Appellate Defender Robert
Michael Dudek, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Michael Douglass Ross, all
of Columbia; and Solicitor Scarlett Anne Wilson, of
Charleston, for Respondent.

**PER CURIAM:** General T. Little appeals his conviction for the murder of his wife, Barbara Little (Victim). Little argues the trial court abused its discretion by (1) refusing to suppress evidence found in Little's vehicle and home because officers conducted a warrantless search by looking through the window of his vehicle while it was in his driveway, (2) denying his motion for a mistrial, and (3) qualifying the State's witness as a footwear expert and admitting her testimony. We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. We affirm the trial court's admission of evidence found in Little's vehicle and home. *See State v. Robinson*, 410 S.C. 519, 526, 765 S.E.2d 564, 568 (2014) ("Because the admission of evidence is within the sound discretion of the trial court, appellate courts should not reverse the decision of the trial court absent an abuse of discretion."). The record showed Deputy Matthew Colburn was the first to respond to the crime scene, where he found a large pool of blood on the floor, blood on the walls, and towels and a blanket soaked in blood. He located the Victim, who was covered in blood, and was unable to determine whether the killer had used a firearm. Deputy Colburn made contact with Little, who agreed to meet him at the crime scene. When Little failed to appear, detectives sent Deputy Colburn to Little's home to locate him. Due to the exigencies presented by the violence at the crime scene—as well as Deputy Colburn's legitimate officer safety concerns—we find the evidence supports the trial court's ruling that Deputy Colburn's minimally intrusive search was reasonable. *See State v. Herring*, 387 S.C. 201, 210, 692 S.E.2d 490, 494 (2009) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness' . . . ."); *id.* ("A fairly perceived need to act on the spot may justify entry and search under the exigent circumstances exception to the warrant requirement."); *id.* ("Protecting the safety of police officers has also been held an exigent circumstance."); *State v. Dobbins*, 420 S.C. 583, 591, 803 S.E.2d 876, 880 (Ct. App. 2017) ("In the Fourth Amendment context, a court is concerned with determining whether a reasonable officer would be moved to take action." (quoting *State v. Wright*, 416 S.C. 353, 369, 785 S.E.2d 479, 487 (Ct. App. 2016))); *State v. Weaver*, 374 S.C. 313, 322, 649 S.E.2d 479, 483 (2007) ("The focus in the state constitution is on whether the invasion of privacy is *reasonable*." (emphasis added)); *Dobbins*, 420 S.C. at 592, 803 S.E.2d at 880 ("Exigent circumstances—such as imminent destruction of evidence, the potential for a suspect to flee, or a risk of danger to police or others—may justify a warrantless entry, but absent hot pursuit, there must be at least probable cause to believe the *exigent circumstances* were present." (emphasis added)).

2. We find the trial court did not err in denying Little's motion for a mistrial because he was not prejudiced by the PowerPoint slide. *See State v. Inman*, 395 S.C. 539, 565, 720 S.E.2d 31, 45 (2011) ("The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law."); *State v. Rowlands*, 343 S.C. 454, 457, 539 S.E.2d 717, 719 (Ct. App. 2000) ("Whether a mistrial is manifestly necessary is a fact specific inquiry."); *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000) ("In order to receive a mistrial, the defendant must show error and resulting prejudice."). During the pretrial suppression hearing, the trial court suppressed the admission of Little's wedding ring, which had traces of blood on it, finding it was obtained from an unlawful search. During the State's closing, it presented a PowerPoint slide, which stated "no jewelry (no ring???)." The slide did not inform the jury of the blood evidence on the wedding band, and the slide was presented to the jury only briefly before the trial court ordered the State to take down the reference to the ring, which the trial court had excluded in its earlier evidentiary hearing. Without the broader context of the ring's blood evidence, the State's error did not prejudice Little, and we are unconvinced by Little's argument that because wedding bands are symbolic, the fact he was not wearing one inherently prejudiced him. *See Harris*, 340 S.C. at 64, 530 S.E.2d at 628 ("[F]or the defendant to be prejudiced, the misconduct must have affected the verdict."); *State v. Huggins*, 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997) ("A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

3. We find the trial court did not err by qualifying Dawn Claycomb as an expert in footwear examination and by admitting her testimony. *See State v. White*, 382 S.C. 265, 269, 676 S.E.2d 684, 686 (2009) ("A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion."). Claycomb testified at length about her experience in footwear examination. She explained she worked in crime scene analysis for five years, trained for three years in footwear examination under the supervision of a qualified footwear impression expert, attended multiples classes, and passed a final competency test on footwear examination. *See State v. Prather*, 429 S.C. 583, 598, 840 S.E.2d 551, 559 (2020) ("To be competent to testify as an expert, a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony." (quoting *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252-53, 487 S.E.2d 596, 598 (1997))). Although she was not certified with the International Association of Identification and had never testified as an expert in footwear examination before, these factors go to the weight of Claycomb's

testimony, not its admissibility. *See White*, 382 S.C. at 273-74, 676 S.E.2d at 688 ("[D]efects in the amount and quality of education or experience go to the weight to be accorded the expert's testimony and not its admissibility." (quoting *State v. Myers*, 301 S.C. 251, 256, 391 S.E.2d 551, 554 (1990))). Thus, the trial court did not err in finding Claycomb qualified to testify as an expert witness.

Further, we hold the trial court did not abuse its discretion in finding the substance of Claycomb's testimony was reliable. *See State v. Hewins*, 409 S.C. 93, 103, 760 S.E.2d 814, 819 (2014) ("An abuse of discretion occurs when the decision of the trial court is based upon an error of law or upon factual findings that are without evidentiary support."); *State v. Council*, 335 S.C. 1, 19, 515 S.E.2d 508, 517 (1999) (holding the trial court must weigh the following factors to determine whether the underlying science is reliable: "(1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures"). First, Claycomb testified she read publications on the subject and explained she was familiar with other experts' research on fundamental footwear patterns. Second, she testified about the method she used in comparing footprint impressions and stated she had previously analyzed footwear evidence in fifteen to twenty cases. Third, Claycomb testified the South Carolina Law Enforcement Division conducts a peer review of her analysis to ensure quality control and to ensure another qualified footwear examiner agrees with her results. Fourth, she explained the procedures and steps she used when comparing footprint impressions. Thus, the trial court did not abuse its discretion in finding the substance of Claycomb's testimony was reliable. *See White*, 382 S.C. at 270, 676 S.E.2d at 686 ("Reliability is a central feature of Rule 702 admissibility . . . .").

**AFFIRMED.**

**LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.**