785 S.E.2d 479

The **STATE**, Respondent,

v.

**Marcus Dwain WRIGHT, Appellant.**

Appellate Case No. 2013–001406.
No. 5401.

Court of Appeals of South Carolina.

Heard Nov. 10, 2015.
Decided April 27, 2016.

J. Falkner Wilkes, of Greenville, for appellant.

Attorney General, Alan McCrory Wilson, Chief Deputy Attorney General, John W. McIntosh, Senior Assistant Deputy Attorney General, Donald J. Zelenka, and Assistant Attorney

General, J. Anthony Mabry, of Columbia; and Solicitor, Jimmy A. Richardson, II, of Conway, for respondent.

LOCKEMY, J.

A jury convicted Marcus Dwain Wright of murdering Jerome Green, Jr. (the Victim), trafficking in cocaine, possession with intent to distribute cocaine base, and possession of a weapon during the commission of a violent crime. On appeal, Wright argues the trial court erred (1) in admitting evidence from the search of his residence, (2) in admitting South Carolina Department of Motor Vehicles (DMV) records without a proper foundation, (3) in admitting evidence that was the fruit of an illegal search of his motel room, (4) in excluding evidence of his co-defendant's prior inconsistent statement, (5) in denying his request to testify at trial, (6) in sentencing him to a statutory sentence of life imprisonment without parole (LWOP) without making express factual findings and where the record did not clearly support a sentence of statutory LWOP, and (7) in refusing to give his requested jury charges on voluntary manslaughter and self-defense. We affirm.

**FACTS**

Wright was charged with fatally shooting the Victim on the evening of April 30, 2012, at the residence of Roy Sinclair, where Wright was selling drugs. At trial, Wright sought to show that (1) he shot the Victim in self-defense because he believed the Victim was reaching for a gun or (2) he shot the Victim in a sudden heat of passion because of comments the Victim made upon entering Sinclair's residence.

Before trial, Wright moved to suppress shell casings and an ammunition receipt seized during the search of the residence at 3635 Kate's Bay Highway where he and his wife, Jacinda, lived. Wright challenged the validity of the search warrant that law enforcement obtained on May 2, 2012, to search 3635 Kate's Bay Highway. Detective David Weaver's search warrant affidavit stated one of Wright's co-defendants, Lanard Powell, informed law enforcement that Wright was the shooter, fled the crime scene in a black BMW, switched getaway vehicles to a dark Escalade, drove to 3635 Kate's Bay Highway, and left the vehicle at that address. According to the affidavit, Powell also informed law enforcement that Wright

obtained the murder weapon from Jacinda at 3635 Kate's Bay Highway, that he believed Wright transported the murder weapon back to 3635 Kate's Bay Highway, and that the weapon might still be in the residence or in one of the vehicles at the residence. Detective Weaver testified he did not speak with Powell but rather prepared the search warrant affidavit based on information Detective Todd Cox provided to him. Detective Weaver also testified he told the magistrate that law enforcement tracked Wright's cell phone signal and the signal "pinged" in the "general area" of 3635 Kate's Bay Highway.

Detective Cox testified Powell did not mention the exact numerical address Wright drove to but rather described the general area; thus, the statement in the affidavit that Powell told law enforcement that Wright drove to 3635 Kate's Bay Highway was not accurate. In addition, according to Detective Cox, Powell stated the murder weapon belonged to Jacinda but did not say where Wright obtained the murder weapon. Thus, according to Detective Cox, the affidavit incorrectly stated Powell said that Wright got the weapon from 3635 Kate's Bay Highway. Nevertheless, the trial court found the search warrant for 3635 Kate's Bay Highway valid. The trial court noted that, although the affidavit appeared to be a little "salted" and contained some information the record did not support, the affidavit had "at least enough verifiable information to support the warrant" and was supported by Detective Weaver's oral testimony that Wright's cell phone "pinged" in the area of 3635 Kate's Bay Highway.

Wright also moved to suppress drugs and money found during the May 2, 2012, search of a motel room occupied by Wright and Powell, both of whom were suspects in the Victim's murder. Detective James Chatfield testified law enforcement tracked Wright and Powell to a Sleep Inn in Conway. The motel clerk telephoned their motel room, and one of the men stepped outside of the room. Detective Chatfield identified the man as one of the two suspects, the officers identified themselves as police officers, the man tried to close the door on them, and the officers held the door open and "forced" their way into the motel room. The officers saw drugs and money in plain view in the motel room and obtained a search warrant at that time. The trial court denied Wright's motion to suppress.

The jury convicted Wright, and the trial court sentenced him to "life imprisonment" for murder and concurrent sentences of five years' imprisonment for possession of a weapon, twenty-five years' imprisonment for trafficking in cocaine, and fifteen years' imprisonment for possession with intent to distribute, all to be served consecutively with the murder sentence.[1]

## STANDARD OF REVIEW

"In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Brown,* 401 S.C. 82, 87, 736 S.E.2d 263, 265 (2012).

## LAW/ANALYSIS

### I. Search of 3635 Kate's Bay Highway

■ Wright argues the trial court erred in finding the search warrant valid and admitting the evidence seized during the search of 3635 Kate's Bay Highway. We disagree.

"The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures and provides that no warrants shall be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized." *Id.* at 88, 736 S.E.2d at 266; *see* U.S. Const. amend. IV.

---

1. Wright asserts on appeal that the trial court erred in sentencing him to LWOP under South Carolina's recidivist statute. *See* S.C.Code Ann. § 17–25–45(A) (2014) (providing that upon conviction for a "most serious offense," a person must be sentenced to LWOP if that person has a prior conviction for a "most serious offense"). We note the trial court did not state it was sentencing Wright to LWOP. Rather, on the sentencing sheet, the trial court wrote "life imprisonment"; noted Wright was convicted of murder in violation of sections 16–3–10 and 16–3–20 of the South Carolina Code (2003 & Supp.2015); and did not mark the box labeled " § 17–25–45," which would have indicated it was sentencing Wright to LWOP under the recidivist statute. The trial court had authority to sentence Wright to life imprisonment under the murder statute. *See* § 16–3–10 (defining murder); § 16–3–20(A) (providing "[a] person who is convicted of or pleads guilty to murder must be punished by death, or by a mandatory minimum term of imprisonment for thirty years to life").

"An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed." *State v. Dupree*, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct.App.2003). "This review, like the determination by the magistrate, is governed by the 'totality of the circumstances' test." *Id.* "The appellate court should give great deference to a magistrate's determination of probable cause." *Id.* "In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention." *State v. Martin*, 347 S.C. 522, 527, 556 S.E.2d 706, 709 (Ct.App.2001).

"A sworn oral statement may be sufficient to satisfy the 'oath or affirmation' requirement of both federal and state constitutions." *State v. Dunbar*, 361 S.C. 240, 247, 603 S.E.2d 615, 619 (Ct.App.2004). However, "[t]he General Assembly has imposed stricter requirements than federal law for issuing a search warrant." *State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000). Section 17–13–140 of the South Carolina Code (2014) mandates, "A warrant . . . shall be issued only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant. If the magistrate . . . is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant. . . ."

"A 'totality-of-the-circumstances' test is utilized in probable cause determinations." *State v. Herring*, 387 S.C. 201, 212, 692 S.E.2d 490, 495 (2009). Under that test,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 212, 692 S.E.2d at 496. "[M]agistrates can issue search warrants based upon hearsay information that is not a result of direct personal observations of the affiant" but rather was "given to the affiant by other officers." *Dunbar*, 361 S.C. at 249, 603 S.E.2d at 620.

"If the affidavit standing alone is insufficient to establish probable cause[,] it may be supplemented by sworn oral testimony before the magistrate." *State v. Adolphe*, 314 S.C. 89, 92, 441 S.E.2d 832, 833 (Ct.App.1994). "[O]ral information may only be used by an affiant to supplement or to amend incorrect information in an affidavit which was not knowingly, intentionally, or recklessly supplied by the affiant." *Jones*, 342 S.C. at 129, 536 S.E.2d at 679. "However, sworn oral testimony, standing alone, does not satisfy [section 17–13–140]." (*State v. McKnight*, 291 S.C. 110, 113, 352 S.E.2d 471, 473 (1987)). Further, a "false affidavit [i]s the equivalent of not having an affidavit at all" and thus violates section 17–13–140 "because if an affidavit is not truthful, then the magistrate must depend totally on information provided orally by the affiant in order to determine if probable cause exists." *Jones*, 342 S.C. at 128, 536 S.E.2d at 679.

We find the magistrate had a substantial basis for determining that, under the totality of the circumstances, there was probable cause to search 3635 Kate's Bay Highway. The information in Detective Weaver's affidavit and supplemental oral testimony, which was relayed to him by the lead investigator, created a fair probability that evidence of the shooting would be found at 3635 Kate's Bay Highway.

We acknowledge that some of the information in Detective Weaver's affidavit was inaccurate. Specifically, Detective Cox admitted that although Powell said the gun belonged to Jacinda, Powell did not say that Wright got the weapon from 3635 Kate's Bay Highway, as stated in the affidavit. In addition, Detective Cox admitted the statement in the affidavit that Powell told law enforcement that Wright drove to 3635 Kate's Bay Highway was not accurate because Powell merely described the general area Wright drove to and did not provide a specific numerical address. However, even without this inaccurate information, the affidavit was sufficient to establish probable cause. Specifically, the affidavit stated Powell informed law enforcement that Wright was the shooter, that Wright fled the scene in a black BMW, and that Wright switched getaway vehicles to a dark Escalade. The affidavit also stated Wright obtained the murder weapon from Jacinda, law enforcement believed Wright transported the murder weapon back to 3635 Kate's Bay Highway, and law enforce-

ment believed the weapon might still be in the residence or in one of the vehicles at the residence.

Further, Detective Weaver's use of oral testimony to supplement the inaccurate information in his affidavit was not inappropriate because there was no evidence that he intentionally, knowingly, or recklessly supplied the inaccurate information. Detective Weaver's oral testimony before the magistrate that Wright's cell phone "pinged" to the general area of 3635 Kate's Bay Highway, where law enforcement discovered Wright's vehicle, provided additional probable cause justifying the search warrant. Accordingly, we hold the issuance of the search warrant did not violate the South Carolina and federal constitutions or section 17–13–140.

## II. The DMV Records

Wright argues the trial court erred in admitting his driving record and title history—both of which listed his address as 3643 Kate's Bay Highway—to show he did not reside at 3635 Kate's Bay Highway and thus lacked standing to challenge the search of the residence. Wright asserts the State failed to lay a proper foundation for the documents and they were inadmissible hearsay not falling within the business record exception. Because we find the search warrant satisfied section 17–13–140 and, thus, the search of 3635 Kate's Bay Highway was constitutional, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues where one issue is dispositive).

## III. Search of Wright's Motel Room

Wright argues the trial court erred in admitting the drugs and money seized from his motel room because the items were the fruits of a warrantless search and no exception to the search warrant requirement applied. We disagree.

"When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial [court]'s ruling if there is any evidence to support the ruling." *State v. Weaver,* 374 S.C. 313, 319, 649 S.E.2d 479, 482 (2007). "The appellate court will reverse only when there is clear error." *Id.*

 "Generally, a warrantless search is *per se* unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures." *Id.* "However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well-recognized exceptions to the warrant requirement." *Id.* "The State bears the burden to demonstrate that it was entitled to conduct the search or seizure under an exception to the Fourth Amendment's warrant requirement." *State v. Robinson,* 410 S.C. 519, 530, 765 S.E.2d 564, 570 (2014).

 "Recognized exceptions to the warrant requirement include plain view and exigent circumstances." *State v. Wright,* 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011). "Under the 'plain view' exception to the warrant requirement, objects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence." *State v. Beckham,* 334 S.C. 302, 317, 513 S.E.2d 606, 613 (1999). The two elements needed to satisfy the plain view exception are (1) the initial intrusion that afforded the authorities the plain view was lawful and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *Wright,* 391 S.C. at 443, 706 S.E.2d at 327.

 "A fairly perceived need to act on the spot may justify entry and search under the exigent circumstances exception to the warrant requirement." *Herring,* 387 S.C. at 210, 692 S.E.2d at 494. "A warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling." *Id.* at 210, 692 S.E.2d at 495; *see id.* at 210, 692 S.E.2d at 494 ("The likelihood a suspect will imminently flee is . . . an exigency warranting . . . an intrusion."); *Wright,* 391 S.C. at 445, 706 S.E.2d at 328 (finding "[e]xigent circumstances developed when the suspects started fleeing"); *Minnesota v. Olson,* 495 U.S. 91, 100–01, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (finding exigent circumstances did not justify a warrantless entry into an upstairs duplex for the purpose of arresting an overnight guest believed to be involved in a murder where the police knew that the suspect was in the upstairs duplex with no suggestion of

danger to the other occupants of the duplex, the police had already recovered the murder weapon, the police thought the suspect was the driver of the getaway car and knew he was not the murderer, the police had surrounded the duplex, it was evident that the suspect was going nowhere, and the suspect would have been promptly apprehended had he exited the duplex). "In such circumstances, a protective sweep of the premises may be permitted." *Herring,* 387 S.C. at 210, 692 S.E.2d at 495.

"[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Wright,* 391 S.C. at 444, 706 S.E.2d at 328 (quoting *Whren v. U.S.,* 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "In the Fourth Amendment context, a court is concerned with determining whether a reasonable officer would be moved to take action." *Id.*

We find evidence supports the trial court's ruling that the officers did not violate Wright's Fourth Amendment rights by seizing the drugs and money found in plain view in his motel room because the officers' entry into the motel room was justified by the exigent circumstances exception to the warrant requirement. We find this case is distinguishable from *Olson.* First, in *Olson,* law enforcement suspected the individual inside the duplex was only the driver of the getaway car and knew he was not the murderer. However, here, at the time the officers entered the motel room, law enforcement had identified both Powell and Wright as suspects in the Victim's murder. Law enforcement had issued an arrest warrant for Powell the day before the search and had been tracking Wright's cell phone for two days. Detective Chatfield testified that when one of the two murder suspects opened the motel room door, stepped outside, and saw the officers—who identified themselves as police officers—he tried to close the door on the officers. At that point, the officers entered the motel room. In addition, in *Olson,* the murder weapon had been recovered at the time the officers entered the duplex; however, here, the murder weapon had not been recovered at the time the officers entered the motel room. Therefore, there was an ongoing danger here that was not present in *Olson.* We find this evidence showed that a potentially armed and

dangerous murder suspect was attempting to flee, creating exigent circumstances justifying the officers' warrantless entry into the motel room.

Moreover, even though Detective Chatfield testified he went inside the motel room because he was looking for Wright, we find a reasonable officer would have entered the room to prevent the suspects from fleeing and to conduct a protective sweep for officer safety because both Wright and Powell were murder suspects. *See Wright*, 391 S.C. at 444, 706 S.E.2d at 328 ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent. In the Fourth Amendment context, a court is concerned with determining whether a reasonable officer would be moved to take action." (emphasis in original) (quoting *Whren*, 517 U.S. at 814, 116 S.Ct. 1769)). Accordingly, because evidence showed exigent circumstances justified the warrantless entry into Wright's motel room, the trial court did not err in refusing to suppress the drugs and money found in plain view in the room.

## IV. Powell's Prior Inconsistent Statement

Wright argues the trial court erred in excluding evidence of Powell's prior inconsistent statement—a letter he wrote that allegedly exonerated Wright and implicated another individual as the Victim's killer—where Wright failed to disclose the letter to the State. Wright contends neither Rule 5(b)(2), SCRCrimP, nor Rule 613, SCRE, required him to present the letter to the State before or during trial in order to cross-examine Powell about the statement. We find this issue unpreserved.

During trial, Wright's counsel asked Powell about a letter he allegedly wrote that exonerated Wright. Powell testified that, while he was incarcerated, Wright promised to get him out of prison if he wrote a statement exonerating Wright. Powell stated Wright gave him a letter to copy, he copied Wright's letter in his handwriting, and he returned both letters to Wright. Wright's counsel asked Powell whether he wrote in the letter that a man nicknamed "Two Guns" shot the Victim. The State objected to Wright's question on the basis that it had previously requested that the letter be disclosed to

it, Wright failed to disclose the letter, and it wanted to see the letter before Wright cross-examined Powell concerning the letter's contents. Because Wright's counsel was unable to produce the letter at trial, the trial court prohibited Wright's counsel from questioning Powell about the letter. The trial court instructed the jury that there was no acceptable evidence to support the questions about the letter and not to consider any of Wright's questions or Powell's answers concerning the letter.

Because Wright failed to proffer Powell's testimony concerning whether he wrote a letter saying a man nicknamed "Two Guns" shot the Victim or the letter itself in response to the State's objection, Wright's objection to the exclusion of that evidence is not preserved. *See State v. Davis,* 309 S.C. 56, 62, 419 S.E.2d 820, 824 (Ct.App.1992) ("[A] reviewing court may not rule on alleged error in the exclusion of evidence unless the record on appeal shows fairly what the rejected evidence would have been."). In addition, Wright's argument that the trial court erred in instructing the jury to disregard Powell's testimony concerning the letter is also unpreserved because Wright acquiesced in the trial court's ruling and failed to object to the curative instruction the trial court gave to the jury. *See State v. Rios,* 388 S.C. 335, 342, 696 S.E.2d 608, 612 (Ct.App.2010) ("[A] party cannot acquiesce to an issue at trial and then complain on appeal."); *State v. Carlson,* 363 S.C. 586, 595, 611 S.E.2d 283, 287 (Ct.App.2005) ("A contemporaneous objection is required to preserve issues for direct appellate review."). Accordingly, we find this issue is not preserved.

## V. Right to Testify

Wright argues the trial court erred in denying his request to testify, which he made after the defense had rested and the trial court had ruled it would not charge the jury on voluntary manslaughter or self-defense. We disagree.

"A motion to reopen the evidentiary record and to allow additional evidence is addressed to the sound discretion of the trial [court,]" and the trial court's "ruling will not be reversed absent an abuse of discretion." *State v. Wren,* 470 S.E.2d 111, 112 (Ct.App.1996).

The right to testify on one's own behalf at a
criminal trial is guaranteed by the Fifth, Sixth, and Four-
teenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 51–52,
107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). "It is one of the rights
that 'are essential to due process of law in a fair adversary
process.'" *Id.* at 51, 107 S.Ct. 2704 (quoting *Faretta v. Califor-
nia*, 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562
(1975)). "However, the right to present testimony is not
without limitation." *State v. Rivera*, 402 S.C. 225, 242, 741
S.E.2d 694, 703 (2013). "The right may, in appropriate cases,
bow to accommodate other legitimate interests in the criminal
trial process. But restrictions of a defendant's right to testify
may not be arbitrary or disproportionate to the purposes they
are designed to serve." *Id.* (internal quotation marks and
citations omitted) (quoting *Rock*, 483 U.S. at 55–56, 107 S.Ct.
2704). "In applying its evidentiary rules[,] a [s]tate must
evaluate whether the interests served by a rule justify the
limitation imposed on the defendant's constitutional right to
testify." *Id.* (quoting *Rock*, 483 U.S. at 56, 107 S.Ct. 2704).
Evidence rules that "'infringe upon a weighty interest of the
accused' but fail to serve any legitimate interest are arbi-
trary." *Id.* (internal quotation marks omitted) (quoting
*Holmes v. South Carolina*, 547 U.S. 319, 324–26, 126 S.Ct.
1727, 164 L.Ed.2d 503 (2006)).

After the State rested its case, the trial court advised
Wright of his right to testify in his defense. The trial court
stated, "And I ask you now—you're not bound at this point,
but have you determined whether you wish to testify or
exercise your right to remain silent?" Wright exercised his
right to remain silent. Wright's counsel announced that the
defense had no other witnesses, the defense rested on the
record, and the trial court adjourned for the day.

The next morning, the trial court held a charge conference
and ruled it would not give the voluntary manslaughter and
self-defense charges Wright requested. Wright's counsel then
explained Wright told him that morning—before the trial
court ruled on the jury charge issue—that he had changed his
mind and wanted to testify. Wright noted that after the State
rested, the trial court told him that he did not have to say at
that time whether he wanted to testify. Consequently, Wright
believed the trial court's statement entitled him to decide at a

later time whether to testify. The trial court admitted it did not emphasize that Wright had to decide during the trial whether to testify; however, the trial court thought any reasonable person would believe the right to testify was extinguished after the defense rested. The trial court stated Wright's counsel should have informed it of Wright's desire to testify before the trial court ruled it would not charge the jury on voluntary manslaughter and self-defense. The trial court stated that after hearing its ruling on the charges, Wright knew which supporting evidence was missing, had it "all mapped out," and would be able to fit his testimony into the required parameters and tell the jury he "was afraid to death." The trial court refused to reopen the record to allow Wright to testify.

■ Initially, we note that this issue is appropriate for direct review. *See id.* at 241, 741 S.E.2d at 702 (holding the defendant's claim that he was denied the right to testify was appropriate for direct review when the record was adequately developed to permit full consideration of the defendant's claim; the pertinent facts were undisputed; a PCR hearing was not necessary to resolve a factual dispute and would not aid in the application of the law; and the defendant's claim was presented not as an ineffective assistance of counsel claim, but rather as an error committed by the trial court in excluding the defendant's testimony, which was not an appropriate basis for an ineffective assistance of counsel claim). Although Wright asserts on appeal that his counsel erred in failing to timely inform the trial court that he wished to testify—which would be an ineffective assistance of counsel claim—he also asserts the trial court erred in denying his request to testify after the defense rested—which would be a claim of constitutional error. *See id.* (citing *Rossignol v. State,* 152 Idaho 700, 703–04, 706, 274 P.3d 1, 4–5, 7 (Ct.App.2012), for the proposition that in determining whether the denial of a defendant's right to testify is a claim of ineffective assistance of counsel or a claim of deprivation of a constitutional right, the appropriate inquiry depends on how the claim is pled and argued). Wright is ultimately asserting the trial court deprived him of his right to testify by refusing to reopen the record and allow

him to testify after the defense rested.[2] *See id.* at 240–41, 741 S.E.2d at 702 (quoting *Passos–Paternina v. United States*, 12 F.Supp.2d 231, 240 (D.P.R.1998), for the proposition that the right to testify exists independently of the right to counsel and that "[r]egardless of whether the denial of the right to testify can be ascribed to defense counsel's conduct, the deprivation complained of is not effective assistance but the right to testify, and the right to testify itself is constitutionally protected").

We hold the trial court did not abuse its discretion in refusing to reopen the record to allow Wright to testify after the defense had rested and the trial court had ruled it would not charge the jury on voluntary manslaughter and self-defense. The trial court was concerned that if it permitted Wright to testify after hearing its ruling on the voluntary manslaughter and self-defense jury charges and learning which supporting evidence the trial court said was missing, Wright would be able to fit his testimony into the required parameters for those charges by testifying that he shot the Victim because he feared for his life. This was a legitimate ground for refusing to reopen the record, and the trial court's restriction of Wright's right to testify was not arbitrary.

## VI. Jury Charge

Wright argues the trial court erred in refusing to instruct the jury on voluntary manslaughter and self-defense given that there was sufficient evidence to create an inference that Wright feared imminent danger before the shooting. We disagree.

 "To warrant reversal, a trial [court's] refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010). "An appellate court will not reverse the trial [court's] decision regarding a jury charge absent an abuse of discretion." *Id.* at 479, 697 S.E.2d at 584. "The law to be charged must be determined from the evidence presented at trial." *State v. Knoten*, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001).

---

**2.** However, nothing in this opinion prevents Wright from seeking PCR for ineffective assistance of counsel.

"In determining whether the evidence required a charge of voluntary manslaughter, we view the facts in a light most favorable to the defendant." *State v. Byrd,* 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996). "Voluntary manslaughter is the intentional and unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Smith,* 391 S.C. 408, 412–13, 706 S.E.2d 12, 14 (2011). "The sudden heat of passion, upon sufficient legal provocation, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *Id.* at 413, 706 S.E.2d at 15. "An overt, threatening act or a physical encounter may constitute sufficient legal provocation." *State v. Hernandez,* 386 S.C. 655, 661, 690 S.E.2d 582, 585 (Ct.App.2010). "Sufficient legal provocation must include more than 'mere words' or a display of a willingness to fight without an overt, threatening act." *Id.*

> To establish self-defense in South Carolina, four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*State v. Light,* 378 S.C. 641, 649, 664 S.E.2d 465, 469 (2008). "If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial [court's] refusal to do so is reversible error." *Id.* at 650, 664 S.E.2d at 469.

Powell, who did not witness the shooting, testified Wright said that shortly before the shooting the Victim knocked on Sinclair's door and Wright opened the door while holding a gun in his hand. There was testimony that the Victim said, "[Y]ou got these dudes running your house like that?" or "[Y]ou got these young boys in your house now," when he entered Sinclair's house. According to Powell, Wright stated the Victim then reached by his abdomen—indicating he had a gun—and Wright shot him because he feared the Victim was reaching for a gun. Powell admitted that if the Victim looked like he was reaching for a gun, he would not yet have had a gun in his hand. The pathologist who performed the Victim's autopsy testified the Victim sustained ten gunshot wounds, three of which were in his back.

■ We hold the trial court did not abuse its discretion in refusing to charge the jury on voluntary manslaughter because, viewing the facts in the light most favorable to Wright, the evidence did not show he killed the Victim in a sudden heat of passion upon sufficient legal provocation. Hearing someone say, "[Y]ou got these young boys in your house now," or, "[Y]ou got these dudes running your house like that," would not shut out knowledge or volition or render the mind of an ordinary person incapable of cool reflection.

■ We also hold the trial court did not abuse its discretion in refusing to charge the jury on self-defense. First, a reasonably prudent person would not have believed he was in actual imminent danger and needed to strike the fatal blow to protect himself from serious bodily harm or death under these facts. There was no evidence that the Victim verbally threatened Wright or that Wright actually saw a gun on the Victim's person before Wright shot him.

Second, evidence was lacking that Wright had no other probable means of avoiding the danger than shooting the Victim ten times, including three times in the back. According to Powell, Wright stated he was already holding a gun when the Victim appeared to be reaching at his side. Even giving some credence to this statement, Wright could have held the gun on the Victim or could have left the scene. Accordingly, because a jury could not reasonably infer that

Wright acted in self-defense, we find the trial court did not err in refusing to instruct the jury on self-defense.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

SHORT, J. concurs.

GEATHERS, J., concurring in a separate opinion.

I depart with the majority's conclusion that a reasonable police officer would have entered Wright's motel room to prevent Wright and Powell from fleeing and to conduct a protective sweep for officer safety. *See State v. Herring,* 387 S.C. 201, 210, 692 S.E.2d 490, 495 (2009) ("A warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling."). Detective Paul Johnson testified that he and other detectives "set up an outside perimeter covering all exits." Therefore, a reasonable officer would rely on this perimeter to prevent Wright or Powell from leaving the premises. *Cf. Minnesota v. Olson,* 495 U.S. 91, 100–101, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (observing no need to prevent a suspect's escape when three or four police squads surrounded the home in which the suspect was a guest).

Further, there was no evidence that police conducted a protective sweep in this case. Rather, Detective Chatfield testified that he "backed out of the room" as Wright and Powell were taken out of the room and the location was secured until a search warrant could be obtained and executed. Likewise, Detective Johnson testified, "Everyone left the room." Therefore, the evidence does not support the application of the exigent circumstances doctrine discussed in *Herring.*

Nonetheless, the intrusion into the motel room was justified by the objective of law enforcement to detain, if not arrest, Wright and Powell for their involvement in the Victim's murder. *See United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a

378

person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." (referencing *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))); *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (holding the petitioner's act of retreating into her house could not thwart a warrantless arrest when it was set in motion in a public place upon probable cause). Therefore, I concur in upholding the trial court's denial of the motion to suppress and affirming Wright's conviction.